**Edovidio R. CARRANZA, Petitioner,**

v.

**IMMIGRATION AND NATURALIZATION SERVICE, Respondent.**

**No. Civ.A. 99–11292–REK.**

United States District Court,
D. Massachusetts.

July 25, 2000.

Edovidio R. Carranza, Shirley, MA, petitioner pro se.

Edward J. Duffy, Office of Immigration Litigation, Civil Division, DOJ, Washington, DC, Brenda M. O'Malley, Dept of Justice, Civil Division, Washington, DC, Terri J. Scadron, Office of Immigration Litigation, U.S. Dept. of Justice, Civil Division, Washington, DC, Frank Crowley, Immigration & Naturalization, Special Assistant U.S. Attorney, Boston, MA, Steven Farquharson, Immigration and Naturalization Service, Boston, MA, Michael P. Lindemann, Assistant Director, Washington, DC, for Immigration & Naturalization Service, US, respondent.

**Memorandum and Order**

KEETON, District Judge.

### I. Pending Matters

Pending before the court are the following:

(1) Respondent's Motion to Alter and Amend Judgment Pursuant to Rule 59(e) (Docket No. 22, filed March 14, 2000);

(2) Petitioner's Motion for Bail (Docket No. 23, filed June 23, 2000).

### II. Procedural and Factual Background

Carranza initially filed a Petition for Writ of Habeas Corpus in the Board of Immigration Appeals, File No. A37–182–508, as a Request for Review of Order for Removal and Stay of Deportation.

A proceeding in the Court of Appeals for the First Circuit, in which petitioner sought direct review, was docketed as No. 99–1428. By Judgment of May 3, 1999, the Court of Appeals DISMISSED the petition because the record showed that petitioner could not obtain habeas relief in that court as an initial matter, since under Fed.R.App.P. 22(a) the "application for a writ of habeas corpus must be made to the appropriate district court."

The petition was thereafter filed in this court on June 16, 1999 (Docket No. 1 in this court).

The petition, filed before the Immigration and Naturalization Services (INS) Office in Boston, alleged (1) that petitioner was indicted in the Suffolk Superior Court, Commonwealth of Massachusetts, for "(i) Assault and Battery, Dangerous Weapon; (ii) Dangerous Weapon, poss gun, no li-

cense, on person in M.V. ...," (2) that he pled guilty, and (3) that he was sentenced on October 1, 1997.

The petitioner alleges that he made the Plea Bargain to protect embarrassment to his family. However, he was not cognitive of the consequences that this would have on his stay in the United States. Although he has had sufficient years a "Permanent Resident" and free of any reasons for deportation, he was careless on his Application for Citizenship. His entire family being United States Citizenship.

File No. A37–182–508, Petition to Amend and to Remove Dangerous Weapon as Reason for Determining Deportation.

Respondent filed a Motion to Dismiss on July 26, 1999 (Docket No. 4), arguing that this court had no subject-matter jurisdiction to review the removal order issued against the petitioner by the INS.

In an Opinion of February 29, 2000 (Docket No. 19), I denied Respondent's Motion to Dismiss, (1) concluding that habeas jurisdiction exists to consider petitioner's constitutional challenges, and (2) finding that the INS improperly failed to exercise discretion in making a determination as to the propriety of instituting proceedings against petitioner and determining that this court has jurisdiction to remand to the BIA for a discretionary determination.

On March 14, 2000, respondent filed a Motion to Alter and Amend Judgment Pursuant to Rule 59(e) (Docket No. 22). In its motion, respondent argues that this court erred as a matter of law in finding that the INS did not exercise discretion in commencing removal proceedings against petitioner, in determining that this court has jurisdiction to review the actions of the INS, and in concluding that this court has habeas jurisdiction.

For the reasons stated in the Opinion of February 29, 2000, and in Parts III and IV below, I conclude that these arguments are not meritorious and will, therefore, deny respondent's motion.

## III. Discretion and Judicial Review

The Attorney General delegated her discretionary authority with respect to immigration to the Commissioner of Immigration and Naturalization and the Executive Office of Immigration Review as follows, in pertinent parts:

Without divesting the Attorney General of any of [her] powers, privileges, or duties under the immigration and naturalization laws, and except as to the Executive Office, the Board, the Office of the Chief Special Inquiry Officer, and Special Inquiry Officers, there is delegated to the Commissioner [of Immigration and Naturalization] the authority of the Attorney General to direct the administration of the [Immigration and Naturalization] Service and to enforce the Act and all other laws relating to the immigration and naturalization of aliens. The Commissioner may issue regulations as deemed necessary or appropriate for the exercise of any authority delegated to [her] by the Attorney General, and may redelegate any such authority to any other officer or employee of the Service.

8 C.F.R. § 2.1.

The Executive Office of Immigration Review shall be headed by a Director, who shall be responsible for the general supervision of the Board of Immigration Appeals and the Office of the Chief Immigration Judge in execution of their duties in accordance with 8 C.F.R. part 3. The Director may redelegate the authority delegated to him by the Attorney General to the Chairman of the Board of Immigration Appeals or the Chief Immigration Judge. The Director shall be assisted in the performance of his duties by an Executive Assistant.

8 C.F.R. § 3.0.

Jurisdiction vests, and proceedings before an Immigration Judge commence, when a charging document is filed with

the Immigration Court by the Service. The charging document must include a certificate showing service on the opposing party pursuant to § 3.32 which indicates the Immigration Court in which the charging document is filed.

8 C.F.R. § 3.14(a).

(a) Any officer authorized by § 239.1(a) to issue a notice to appear may cancel such notice prior to jurisdiction vesting with the immigration judge pursuant to § 3.14 of this chapter provided the officer is satisfied that

\* \* \* \* \* \*

(6) The notice to appear was improvidently issued, or

(7) Circumstances of the case have changed after the notice to appear was issued to such an extent that continuation is no longer in the best interest of the government.

8 C.F.R. § 239.2. *See also de Gonzalez v. INS,* 996 F.2d 804, 806–07 (6th Cir.1993).

In the Opinion of February 29, 2000, I found that the INS failed to exercise discretion by making a reasoned determination at any point concerning the propriety of instituting and continuing removal proceedings against petitioner. I made this finding based on the compelling equitable reasons supporting a decision not to institute proceedings against petitioner, the brief period between petitioner's plea in criminal proceedings and the INS's issuance of a notice to appear, as well as several recent statements by the regional director of the INS for the Northeast region, Steven Farquharson.

Carranza admits to striking Nereda Perez–Gonzalez several times on March 23, 1996, the incident that gave rise to the criminal convictions underlying petitioner's removal. Carranza had been involved in a romantic relationship with Ms. Perez for several years during a period in which he was working Monday through Friday in Boston, returning to Maine to be with his family on the weekends. When Carranza was in Boston, he resided in a trailer owned by his employer, Prenca Junkovic; the assault on Ms. Perez occurred in this trailer. It appears from the record that Ms. Perez alleged that Carranza brandished a gun during the assault. After Carranza consented to a search of the trailer, the police found a handgun. Carranza was later charged with, and pleaded guilty to, assault and battery with a dangerous weapon and unlawful possession of a firearm. Carranza later proffered the affidavit of Mr. Junkovic who stated that he owned the handgun seized from the trailer and that he stored it in the trailer.

To the facts recited above, Carranza adds the allegations that his common-law wife is a United States citizen, that his four children and two foster children are United States citizens, that he has owned his own home in Maine for over ten years, and, other than the incident at issue, has been a law-abiding and tax-paying resident of the United States for approximately twenty years. Numerous friends and neighbors of petitioner have submitted affidavits testifying to his good character. He further alleges that his attorney at trial failed to advise him of the consequences of pleading guilty to the weapons charges (both the possession count and the weapon component of the assault and battery count). Carranza argues that had he known the full consequences of his guilty pleas, he would never have pleaded guilty and instead would have gone to trial.

When weighing the gravity of Carranza's offense against the equitable factors in his favor, I find that equity weighs strongly against initiating deportation proceedings against Carranza. As a district court judge I am not in the position of reviewing the reasoned determination of the INS on the equities of petitioner's case. My conclusion as to the equities of petitioner's case, however, is relevant to my consideration of the issue of whether the INS in fact made a reasoned determination on the merits of petitioner's case before initiating deportation proceedings against him. It provides some evidence that the INS did

not make a discretionary determination in Carranza's case.

█ As noted in the Opinion of February 29, 2000, in this case Mr. Carranza pleaded guilty on October 1, 1997, and the INS issued a Notice to Appear on December 12, 1997. It seems unlikely that the INS had time to investigate, compile information about Mr. Carranza's background and the offense, and make a discretionary determination about the propriety of instituting proceedings in that short time. In its motion to amend judgment, the INS has not provided any further explanation of the events that occurred between October 1, 1997, and December 12, 1997, that demonstrate that the Commission conducted an investigation or otherwise collected information in order to make a reasoned judgment about the propriety of instituting proceedings against Carranza. I conclude that a decision regarding a discretionary determination has not been made and should have been made.

Respondent argues in its motion that the government's position is that the INS has "unfettered discretion as to when— and whether—to commence immigration proceedings," Docket No. 22 at 3, citing *Heckler v. Chaney*, 470 U.S. 821, 831, 105 S.Ct. 1649, 84 L.Ed.2d 714 (1985), and its progeny in support. Respondent then argues that "the act of issuing a notice to appear against Mr. Carranza constituted an exercise of the INS's discretion to commence removal proceedings against him." Docket No. 22 at 4.

Respondent attempts to portray as simple and straightforward a legal doctrine and a factual context both of which are significantly less clear. A fair reading of *Heckler* does not lead to the conclusion that all actions by prosecutors with respect to prosecutions are immune from review. *See INS v. Doherty*, 502 U.S. 314, 330, 112 S.Ct. 719, 116 L.Ed.2d 823 (1992) ("I do not question the Court's premise that the decision whether to permit reopening of an immigration proceeding is discretionary. Even discretion, however, has its legal lim-

its.") (Scalia, J., concurring) (internal citation omitted); *cf.* Louis L. Jaffe, *Judicial Control of Administrative Action* 375 (1965) ("[T]here are very few discretions, however broad, substantially affecting the person or property of an individual which cannot at some point come under judicial surveillance."). *Heckler* provides support for the proposition that an agency, acting within the scope of its prosecutorial discretion, that considers the merits of an enforcement action before deciding not to enforce is immune from judicial review of this discretionary determination. *Heckler* differs from the facts of this case in that is was undisputed in *Heckler* that the FDA had considered seriously the merits of enforcement before making the decision not to enforce. Here, I made a finding that the INS has not considered the facts of petitioner's case, and did not consider them before initiating deportation proceedings.

Respondent makes the error in its brief of conflating an act of discretion with an act (unmodified). Respondent argues that this court should infer from the fact that the INS acted that the INS exercised discretion. This argument is unpersuasive because it strips the word "discretion" of much of its meaning. Discretion connotes on the one hand the power to act, but also the obligation to act within legal guidelines and to exercise reasoned judgment. Prosecutorial decisions made on impermissible grounds (e.g. race-based decisionmaking) or on an unreasoned basis (prosecutions based on throws of the dice) are not immune from judicial review.

As I noted in the Opinion of February 29, 2000, although this district court cannot review the decision that the INS reaches after exercising its discretion, this court can require that the INS exercise discretion rather than deciding that is has no discretion. It seems that the INS may understand its role in the post-IIRIRA era to be merely executory, instituting removal proceedings, adjudicating cases and executing removal orders without any individ-

ual discretionary consideration. Although counsel for the INS argues stridently in her brief that the INS has the power to make discretionary decisions, it is not at all clear that those who act on behalf of the INS in the field understand the scope of the INS's discretionary power. *See* Charles Radin, "INS Arrest Prompts Concern Deportation Pending for Youth Volunteer," *Boston Globe*, February 17, 2000, at B4 (reporting Steven Farquharson, regional director of the INS, as saying that the INS "has neither the capacity nor the right to investigate or take into account mitigating factors in cases that are referred to it" and quoting him as saying, "The way the immigration laws have been written, a person is classified as an aggravated felon fairly easily.... Once that happens, most forms of discretionary relief are prohibited. Most things cannot be taken into consideration by the INS or the immigration judge."); Cindy Rodriguez, "Immigration law fueling debate: INS provision has criminals serving lengthy sentences," *Boston Globe*, April 13, 1999, at B1 (quoting director Farquharson as saying, "There's no question that some of those provisions are harsh. It has harsh consequences for people who have been here for many years. What's made is so onerous is that discretion doesn't exist anymore. I would certainly like to have more discretion to look at individuals on a case-by-case basis.").

The Board of Immigration Appeals emphasized the importance of reasoned consideration of each case on its own merits in its decision in *Matter of Marin*, 16 I & N Dec. 581, 584 (1978): "The undesirability and difficulty, if not impossibility, of defining any standard in discretionary matters of this character which may be applied in a stereotyped manner has long been recognized.... Instead, it has been held that each case must be judged on its own merits." (internal citation omitted). Although *Marin* concerned review of a denial of discretionary relief under § 212(c), a form of relief no longer available, the Board's general guidance concerning the methods of discretionary decisionmaking remains apposite. If the INS has misinterpreted the consequences of the recent amendments to the immigration laws to strip it of the authority to carry out this kind of decisionmaking, then the INS is in violation of the law. As a prominent immigration law scholar recently commented:

"[I]mproper interpretations of the boundaries of agency discretion may facilitate evasion of accountability for unjustified deprivations of liberty. Congress may delegate to the agency the authority to grant relief, and the agency may choose to adopt an improperly narrow interpretation of that authority, while wrongly attributing the responsibility to Congress.... Requiring the agency to confront the breadth of its power not only vindicates the individual's legal right to consideration, but also contributes to the responsible exercise of that power."

Gerald L. Neuman, *Jurisdiction and the Rule of Law after the 1996 Immigration Act*, 113 Harv.L.Rev.1963, 1994 (2000); *see also Phelps Dodge Corp. v. National Labor Relations Board*, 313 U.S. 177, 197, 61 S.Ct. 845, 85 L.Ed. 1271 (1941) ("[In remanding] we do not intend to enter the province that belongs to the Board, nor do we do so. All we ask of the Board is to give clear indication that is has exercised the discretion with which Congress has empowered it. This is to affirm most emphatically the authority of the Board"); *SEC v. Chenery Corp.*, 318 U.S. 80, 94–95, 63 S.Ct. 454, 87 L.Ed. 626 (1943).

Available evidence strongly supports the inference, and I find, that employees of the INS do not recognize the scope of their discretionary power in assessing the merits of individual cases before proceeding, and during proceedings, and that in the case of Carranza they did not make a discretionary determination as to the propriety of instituting proceedings against him.

## IV. Habeas Jurisdiction

Respondent argues in its motion that this court erred as a matter of law in concluding that habeas jurisdiction existed to consider petitioner's constitutional claims. I find this argument unpersuasive for the reasons stated in the Opinion of February 29, 2000. *See also Ramos–Flores v. INS,* 1999 WL 1788910 at *5 (D.Mass. Oct.27, 1999); *Vasquez v. Reno,* 2000 WL 620200 at *3–4 (D.Mass. April 21, 2000) (concluding that habeas jurisdiction exists in permanent-rules removal cases to consider both constitutional and statutory claims).

## V. Petitioner's Motion for Bail

 In his motion, petitioner requests that this court authorize his release on bail at this time. Petitioner has not directed me to any statute that authorizes a federal district judge to grant bail in the first instance to an INS detainee. Petitioner needs to exhaust his administrative remedies first before filing a motion in this court. If petitioner can demonstrate that he has unlawfully been denied the opportunity to be released on bail, and that he has exhausted his administrative remedies, then he may petition this court for writ of habeas corpus to consider the legality of his detention.

## VI. Conclusion

For the reasons stated above, and in the Opinion of February 29, 2000, Respondent's Motion to Alter and Amend Judgment Pursuant to Rule 59(e) is denied.

## ORDER

For the foregoing reasons, it is hereby ORDERED:

(1) Respondent's Motion to Alter and Amend Judgment Pursuant to Rule 59(e) (Docket No. 22) is DENIED.

(2) Petitioner's Motion for Bail (Docket No. 23) is DISMISSED.

(3) The Clerk is directed to enter forthwith on a separate document a Final Order as follows:

For the reasons stated in the Memorandum and Order of this date and the Opinion of February 29, 2000, Respondent's Motion to Alter and Amend Judgment Pursuant to Rule 59(e) is DENIED.

Petitioner's Motion for Bail is DISMISSED.

This case is closed.

### Final Order

For the reasons stated in the Memorandum and Order of this date and the Opinion of February 29, 2000, Respondent's Motion to Alter and Amend Judgment Pursuant to Rule 59(e) is DENIED.

Petitioner's Motion for Bail is DISMISSED.

This case is closed.