# United States Court of Appeals
## For the First Circuit

---

No. 00-2365

EDOVIDIO R. CARRANZA,
Petitioner, Appellee,

v.

IMMIGRATION AND NATURALIZATION SERVICE,
Respondent, Appellant.

---

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Robert E. Keeton, U.S. District Judge]

---

Before

Selya, Circuit Judge,

Stahl, Senior Circuit Judge,

and Lynch, Circuit Judge.

---

Robert M. Loeb, Attorney, Appellate Staff, Civil Division, U.S. Dep't of Justice, with whom Stuart E. Schiffer, Acting Assistant Attorney General, Donald K. Stern, United States Attorney, and Daniel L. Kaplan, Attorney, Appellate Staff, were on brief, for appellant.
Andrew Nathanson, with whom Mintz, Levin, Cohn, Ferris, Glovsky & Popeo, P.C. was on brief, for appellee.

---

January 17, 2002

---

**SELYA, Circuit Judge.** This appeal presents the issue of whether an alien who was convicted of an aggravated felony after the effective date of the Illegal Immigration Reform and Immigrant Responsibility Act, Pub. L. No. 104-208 (1996) (codified in scattered sections of 8 U.S.C.) (IIRIRA), may obtain habeas relief on the ground that the Immigration and Naturalization Service (INS) failed to exercise discretion when it initiated deportation proceedings against him. The district court found this issue lurking in the penumbra of the case; deemed it a sufficient basis to grant relief in favor of petitioner-appellee Edovidio R. Carranza; and therefore ordered further consideration of the petitioner's situation by the Board of Immigration Appeals (BIA). See Carranza v. INS, 89 F. Supp. 2d 91, 95-97 (D. Mass. 2000) (Carranza I); see also Carranza v. INS, 111 F. Supp. 2d 60, 64 (D. Mass. 2000) (Carranza II) (denying Rule 59(e) motion). We reverse.

## I. BACKGROUND

The petitioner is a Guatemalan national who entered this country over two decades ago. He lived in Maine with his common-law wife and children, but worked in Boston. On March 23, 1996, police officers in that city arrested him after he engaged in a violent dispute with his mistress. On October 1, 1997, the petitioner entered a guilty plea in state court to

-3-

reduced charges (assault with a dangerous weapon and unlawful possession of a firearm). The court imposed a three-year incarcerative sentence.

Roughly ten weeks later, the INS commenced deportation proceedings by issuing a notice to appear before an immigration judge (IJ). The IJ held a removal hearing on March 5, 1998. The petitioner appeared pro se. The hearing was not completed on that date, and the petitioner filed an application for suspension of deportation, citing family and economic concerns. When the hearing resumed (June 2, 1998), the petitioner admitted to the assault conviction. He would not take responsibility for the firearms conviction, however, adamantly asserting that the weapon was not his.

The IJ found that the INS had sustained its burden of showing removability pursuant to 8 U.S.C. § 1227(a)(2)(C); took the firearms conviction at face value; and held that the petitioner, as a firearms offender who had committed an aggravated felony, see id. § 1101(a)(43)(F), was ineligible for cancellation of removal (the IIRIRA's equivalent of suspension of deportation). The petitioner appealed, and the BIA upheld the decision.

The petitioner essayed a court challenge to the BIA's decision. He filed papers in this court in which he effectively

conceded both his aggravated felon status and his ineligibility for the cancellation of removal process established under 28 U.S.C. § 1229b.  Citing the bar to direct review contained in 8 U.S.C. § 1252(a)(2)(C), we determined that we lacked jurisdiction to scrutinize the BIA's decision.  Carranza v. INS, No. 99-1428 (1st Cir. May 3, 1999) (unpublished order).  Withal, we noted that the petitioner's papers could be read as requesting relief in the nature of habeas corpus and transferred the matter to the district court for consideration of that claim.  Id. at 1-2 (referencing 28 U.S.C. § 2241).

In the district court, the petitioner claimed that he had not been properly advised of the consequences of pleading guilty to the firearms charge and asserted that he would have contested that charge had he known the ramifications.  To show that he had a viable defense, he tendered a statement from his landlord maintaining that the landlord (rather than the petitioner) owned the gun.  He also proffered evidence of his good character and his son's delicate medical condition.

The district court held a non-evidentiary hearing on January 20, 2000.  The petitioner again appeared pro se.  Although the petitioner had not raised the question, the court expressed concern as to whether the Attorney General had exercised discretion before initiating removal proceedings.

-5-

Counsel for the INS stubbornly refused to address this concern, but, rather, (1) questioned the district court's jurisdiction to hear the matter, and (2) asserted that when an alien had been convicted of an aggravated felony, the IIRIRA left the Attorney General no choice but to proceed with deportation.

On February 29, 2000, the district court issued an opinion in which it rejected the INS's contention that the court lacked habeas jurisdiction. Carranza I, 89 F. Supp. 2d at 94-95. The court then concluded that "[a]lthough this district court cannot review the decision that the INS reaches after exercising its discretion, this court can require that the INS exercise discretion rather than deciding that [it] has no discretion." Id. at 95. The court emphasized the very short time that had elapsed between the petitioner's conviction and the INS's issuance of the notice to appear — roughly ten weeks — and ruled that the INS had brought removal proceedings against the petitioner without any antecedent exercise of discretion. Id. On that basis, the court remanded the case to the BIA "for a discretionary determination of the propriety of having commenced proceedings against Carranza," and appointed counsel for him. Id. at 97. At the same time, the court dismissed the petitioner's ineffective assistance of counsel claim vis-à-vis

the firearms conviction on the ground that the petitioner had failed to exhaust available state remedies.[1]  Id. at 96.

The INS promptly moved to alter or amend the judgment. See Fed. R. Civ. P. 59(e).  It asserted that the district court had misunderstood its position and argued that the decision to institute removal proceedings against the petitioner itself represented the required exercise of discretion.  The district court rejected this entreaty, stating that the INS had "conflat[ed] an act of discretion with an act (unmodified)." Carranza II, 111 F. Supp. 2d at 63.  The court concluded:

> Available evidence strongly supports the inference . . . that employees of the INS do not recognize the scope of their discretionary power in assessing the merits of individual cases before proceeding, and during proceedings, and that in the case of [petitioner] they did not make a discretionary determination as to the propriety of instituting proceedings against him.

Id. at 64.  This timely appeal followed.

## II.  ANALYSIS

We think it useful to begin by attempting to distill some semblance of clarity from the Byzantine realm of immigration law.  We then mull the particulars of the case at hand.

---

[1]The petitioner has not appealed from this portion of the district court's ukase.

## A. <u>Historical Overview</u>.

The Immigration and Nationality Act of 1952, ch. 2, § 212, 66 Stat. 187 (1952) (repealed 1996) (INA), gave the Attorney General discretion to permit aliens lawfully admitted for permanent residence to return after a temporary absence.[2] This seemingly innocuous provision was later interpreted to permit the Attorney General, as a matter of discretion, to waive deportation for removable aliens already within the United States. <u>Wallace</u> v. <u>Reno</u>, 194 F.3d 279, 281 (1st Cir. 1999). Such waivers came to be known as "212(c) waivers" or "212(c) relief."

In <u>United States ex rel. Accardi</u> v. <u>Shaughnessy</u>, 347 U.S. 260 (1954), the Supreme Court encountered a claim based on a substantively similar provision embodied in an earlier version of the immigration laws. There, an alien filed a habeas petition in which he charged the Attorney General with improperly influencing the BIA and thus precluding meaningful review of his application for 212(c) relief. <u>Id.</u> at 263-65. The Court found this claim colorable under the district court's habeas jurisdiction, reasoning that the regulations granted the

---

[2]The Attorney General's discretion in this field has from time to time been delegated to the BIA and/or the INS. <u>See</u> <u>United States ex rel. Accardi</u> v. <u>Shaughnessy</u>, 347 U.S. 260, 265-66 & n.6 (1954) (discussing this phenomenon).

BIA discretion in passing upon applications for equitable relief from deportation, and that the BIA's failure to exercise this discretion was actionable. Id. at 268. The Court concluded:

> If petitioner can prove the allegation, he should receive a new hearing before the Board without the burden of previous proscription by the [Attorney General's bias]. . . . [I]n arriving at its decision [the Board must] exercise its own independent discretion, after a fair hearing, which is nothing more than what the regulations accord petitioner as a right.

Id.

Critical to this analysis was the admonition that a court reviewing a habeas claim could not pass upon the merits of the BIA's final decision on the appropriateness of discretionary relief. See id. (warning that the petitioner "may still fail to convince the Board or the Attorney General, in the exercise of their discretion, that he is entitled to suspension"). The Court reiterated this point two years later, declaring that "[a]lthough . . . aliens have been given a right to a discretionary determination on an application for suspension, a grant thereof is manifestly not a matter of right under any circumstances, but rather is in all cases a matter of grace." Jay v. Boyd, 351 U.S. 345, 354 (1956) (citation omitted).

This, then, was the state of the law while the INA remained in force. Because section 212(c) afforded a deportable

alien an opportunity to apply for discretionary relief, an eligible alien could seek habeas review if and when the INS refused to entertain such an application <u>at all</u>. This is not an especially radical view of the law, but, rather, a particularized application of the precept that as long as a regulation is properly promulgated and stays in force, "the Executive Branch is bound by it, and indeed the United States as the sovereign composed of the three branches is bound to respect and to enforce it." <u>United States</u> v. <u>Nixon</u>, 418 U.S. 683, 696 (1974) (citing <u>Accardi</u>).

In 1996, Congress enacted the IIRIRA,[3] and the tectonic plates shifted. One section of the IIRIRA provides that "notwithstanding any other provision of law, no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter." 8 U.S.C. § 1252(g). Another section prohibits judicial review of any appeal challenging a final order of removal if initiated by an alien convicted of an aggravated felony. <u>Id.</u> § 1252(a)(2)(C).

---

[3]Some of the provisions cited herein are, in fact, amendments to the Antiterrorism and Effective Death Penalty Act, Pub. L. No. 104-132, 110 Stat. 1214 (1996). <u>See</u> <u>Goncalves</u> v. <u>Reno</u>, 144 F.3d 110, 112-13 (1st Cir. 1998).

The IIRIRA also changed the form and method by which the Attorney General (and through him or her the INS, see supra note 2) may grant discretionary relief.  Congress abolished 212(c) waivers entirely and substituted a process called "cancellation of removal."  Id. § 1229b.  The new procedure is considerably more restrictive.  Of particular interest here, it prohibits the Attorney General from exercising his or her discretion to halt the removal of any alien convicted of an aggravated felony.  Id. § 1229b(a)(3).

The import of these statutes was not immediately apparent.  In Goncalves v. Reno, 144 F.3d 110 (1st Cir. 1998), we faced a situation in which the petitioner, having been convicted of non-aggravated felonies, applied for 212(c) relief before the passage of the IIRIRA.  Id. at 114.  The INS thereafter refused to process his application, and the petitioner sought habeas review.  Id. at 112.  We ruled that the federal courts' habeas jurisdiction survived the enactment of the IIRIRA.  Id. at 122-23.  We then held that the petitioner was still eligible to pursue 212(c) relief because Congress did not intend the IIRIRA to apply retroactively to invalidate 212(c) applications that had been placed on record before the IIRIRA's effective date.  Id. at 133.

A year later, the Supreme Court decided <u>Reno</u> v. <u>American-Arab Anti-Discrimination Committee</u>, 525 U.S. 471 (1999) (<u>AADC</u>). There, a group of aliens sought to contest the initiation of removal proceedings on the ground that the INS had targeted them in retaliation for their political beliefs. <u>Id.</u> at 473-74. The case came before the Court on direct review, and the Court read 8 U.S.C. § 1252(g) as barring the exercise of jurisdiction over the aliens' claims. <u>Id.</u> at 492. The Court added that, in all events, "an alien unlawfully in this country has no constitutional right to assert selective enforcement as a defense against his deportation." <u>Id.</u> at 488.

We addressed the impact of <u>AADC</u> in <u>Mahadeo</u> v. <u>Reno</u>, 226 F.3d 3 (1st Cir. 2000). There, an alien whose prior convictions disqualified him for discretionary relief under the IIRIRA — but not under the INA — claimed eligibility for a 212(c) waiver on the ground that the convictions predated the IIRIRA. <u>Id.</u> at 6. We rejected the Attorney General's argument that <u>AADC</u> overruled <u>Goncalves</u>, or, alternatively, that the petitioner no longer was eligible for discretionary relief because deportation proceedings had not commenced until after the expiration of the so-called transitional rules.[4]  <u>See</u> <u>id.</u> at 10 (holding that

_____

[4]Congress established certain transitional rules to apply to cases pending at the time that the IIRIRA was enacted. <u>See</u> IIRIRA § 309(c). Under these rules, Congress delayed the

-12-

"IIRIRA's permanent rules lack the clear statement of the congressional intent necessary to eliminate habeas review"). Noting that <u>AADC</u> applied only to cases on direct review, <u>id.</u> at 12, we remanded Mahadeo's case to the district court for further proceedings, <u>id.</u> at 15.

The Supreme Court reentered the fray last term in two companion cases. <u>See</u> <u>INS</u> v. <u>St. Cyr</u>, 121 S. Ct. 2271 (2001); <u>Calcano-Martinez</u> v. <u>INS</u>, 121 S. Ct. 2268 (2001). Those decisions closely tracked the line we had drawn in <u>Goncalves</u> and <u>Mahadeo</u>:

> If it were clear that the question of law could be answered in another judicial forum, it might be permissible to accept the INS' reading of § 1252. But the absence of such a forum, coupled with the lack of a clear, unambiguous, and express statement of congressional intent to preclude judicial consideration on habeas of such an important question of law, strongly counsels against adopting a construction that would raise serious constitutional questions. Accordingly, we conclude that habeas

enforcement of section 1252(b)(9) (removing jurisdiction for judicial review of INS decisions to commence removal) until April 1, 1997, but made section 1252(g) (eliminating judicial review of appeals launched by aggravated felons) effective immediately. <u>Id.</u> § 309(a). The parties quarrel about whether section 1252(g) or section 1252(b)(9) applies after the expiration of the transitional rules. There is a simple solution to this quandary: both sections apply. From and after April 1, 1997, Congress eliminated judicial review not only over decisions to initiate removal but also over attempts by aliens thereafter convicted of aggravated felonies to appeal removal orders. <u>See</u> <u>AADC</u>, 525 U.S. at 483.

-13-

> jurisdiction under [28 U.S.C.] § 2241 was
> not repealed by AEDPA and IIRIRA.

St. Cyr, 121 S. Ct. at 2287 (citation omitted). Federal courts therefore retain subject matter jurisdiction over habeas petitions brought by aliens facing removal to the extent that those petitions are based on colorable claims of legal error, that is, colorable claims that an alien's statutory or constitutional rights have been violated.

### B. **The Case at Hand.**

In light of St. Cyr, INS's principal argument — that section 1252(g) forecloses the exercise of habeas jurisdiction over cases in which an alien challenges his imminent deportation — is a dead letter. Here, however, the habeas petition is filed by an aggravated felon who was convicted of the predicate crime after the effective date of the IIRIRA. Under 8 U.S.C. § 1229b(a)(3), such an alien has no statutory right to any particular process for withholding deportation. The question, then, is whether a claim grounded solely in the INS's failure to exercise its prosecutorial discretion is colorable under 28 § U.S.C. 2241. We think not.

In each of the cases that we have discussed — Accardi and Goncalves are prime examples — an alien was afforded a statutory right to have an application for discretionary relief

-14-

considered.  See Accardi, 347 U.S. at 268; Goncalves, 144 F.3d

at 125.  We elaborated upon this point in Goncalves:

> Analytically, the decision whether an alien
> is eligible to be considered for a
> particular discretionary form of relief is a
> statutory question separate from the
> discretionary component of the
> administrative decision whether to grant
> relief.
>
> . . . .  The Court has determined that the
> refusal of the BIA to consider an alien's
> request for discretionary relief, in
> violation of statute or regulations, is a
> valid claim on habeas corpus.  In making
> certain aliens eligible for discretionary
> relief, Congress intended the Attorney
> General or her designated subordinates to
> make a judgment.  A refusal to make that
> judgment would frustrate Congress' intent. .
> . .  Thus it is no answer to [the
> petitioner's] argument to emphasize the
> broad discretion of the political branches
> in immigration matters.  It was the intent
> of Congress that such discretion be
> exercised.

144 F.3d at 125 (citations omitted).  As this discussion makes

pellucid, under earlier legal regimes an alien could bring a

habeas claim if he was not afforded access to the process

through which the INS could exercise its discretion to withhold

deportation.  The alien could not, however, challenge the INS's

decision (i.e., its exercise or non-exercise of discretion) on

its merits.  Jay, 351 U.S. at 353.  Put another way, the alien

had a right to the process, enforceable by habeas if need be,

but no right to a particular result.

The question, then, reduces to whether, in the circumstances of this case, the petitioner has shown an established right to a particular process. Such an established right may inure by statute or by constitutional command. See 28 U.S.C. § 2241(c)(3) (extending the writ of habeas corpus to persons held "in violation of the Constitution or laws or treaties of the United States"). Without such an established right, however, an alien's claim simply is not cognizable under the habeas statute.

No such right exists here. The petitioner, following the district court's lead, questions whether the INS exercised its discretion at all. In the habeas context, we may conduct an inquiry into the exercise <u>vel</u> <u>non</u> of discretion only when Congress has afforded the alien a statutory right to be considered for discretionary relief. While the INS retains inherent prosecutorial discretion as to whether to bring removal proceedings, <u>see</u> <u>AADC</u>, 525 U.S. at 489, there is no provision of law which gives an alien aggravated felon, convicted after September 30, 1996 (the effective date of the IIRIRA), a statutory right to be considered for such a discretionary determination. And once the removal determination has been made, Congress has eliminated any right for such an individual

-16-

to be considered by the Attorney General for cancellation of removal. See 8 U.S.C. § 1229b(a)(3).

The only remaining issue is whether the petitioner maintains some residual constitutional right, presumably emanating from the Due Process Clause, to have the INS weigh the equities of his appeal — or as the district court phrased it, to have the INS perform "an act of discretion" rather than "an act (unmodified)." Carranza II, 111 F. Supp. 2d at 63. The text of the Constitution does not confer such a right, and the case law does not support its existence. That leaves only the possibility of creating such an entitlement out of whole cloth — but doing so would fly in the teeth of the general proscription against judicial review of any aspect of such prosecutorial deliberations.[5] See Wayte v. United States, 470 U.S. 598, 607-08 (1985). That proscription has undeniable

_____

[5]We exempt from this general proscription, of course, government misconduct that violates the Equal Protection Clause. See Bordenkircher v. Hayes, 434 U.S. 357, 364 (1978) ("[T]he conscious exercise of some selectivity in enforcement is not in itself a federal constitutional violation so long as the selection was not deliberately based upon an unjustifiable standard such as race, religion, or other arbitrary classification.") (citation and internal quotation marks omitted). In much the same vein, the AADC Court, in dictum, left room for "the possibility of a rare case in which the alleged basis of discrimination is so outrageous" that an exception might lie. 525 U.S. at 491. Because nothing remotely resembling egregious government misconduct is alleged here, we need not pursue this point.

-17-

relevance here.  See AADC, 525 U.S. at 491 ("The contention that a[n immigration] violation must be allowed to continue because it has been improperly selected [for prosecution] is not powerfully appealing.").  Indeed, the Court has made it plain that no general constitutional right exists for an alien in the petitioner's circumstances to review prosecutorial deliberations in order to forfend removal.  See id. at 487-92.  We see no founded basis for applying a different constitutional principle to the absence of such deliberations.

This construct comports with the way in which writs of habeas corpus historically have been employed in the immigration context.  As a general rule, the type of claims that are available to aliens on habeas are restricted, see Bowrin v. INS, 194 F.3d 483, 490 (4th Cir. 1999) (limiting habeas review in immigration cases to "questions of pure law"),[6] and here, habeas cannot lie without the linchpin of a right granted by statute.[7]  Whether or not the INS exercised its discretion is therefore beside any relevant point.  Because the petitioner did not have

_____

[6]Purely legal questions are suitable for habeas review because answering them does not necessitate second-guessing "the agency's factual findings or the Attorney General's exercise of her discretion."  Henderson v. INS, 157 F.3d 106, 120 n.10 (2d Cir. 1998) (citing Goncalves, 144 F.3d at 125).

[7]This holding does not in any way implicate the Suspension Clause.  See Delaney v. Matesanz, 264 F.3d 7, 13 (1st Cir. 2001) ("The Suspension Clause applies (if at all) only when Congress totally bars an individual or a group from access to habeas relief.").

a right to demand the exercise of this discretion in the first place, it follows inexorably that he cannot challenge its non-exercise by means of an application for habeas review.

That ends the matter. Unlike the alien in St. Cyr, 121 S. Ct. at 2275, the petitioner pleaded guilty to an aggravated felony after the IIRIRA's effective date. Thus, the process that gave rise to habeas jurisdiction in earlier cases — the right to be considered for 212(c) relief — is unavailable to him. As an aggravated felon, the petitioner is ineligible to apply for cancellation of removal (and, thus, has no statutory right on which to base a claim that the Attorney General refused to exercise discretion in respect to his removal). This is completely congruent with the absence of any colorable constitutional claim in that respect. See supra.

## III. CONCLUSION

We need go no further. Barring a colorable statutory or constitutional claim, the failure of the INS to exercise individualized discretion in its decision to initiate deportation proceedings against an alien convicted of an aggravated felony after the effective date of the IIRIRA does not fall within the purview of the residual federal habeas statute, 28 U.S.C. § 2241. Thus, we hold that the petitioner — an alien convicted of an aggravated felony after the IIRIRA's effective date — lacks any entitlement to pursue habeas relief

on the ground that the INS refused to exercise discretion in instituting deportation proceedings.  On this basis, we reverse the judgment below and remand the matter to the district court with instructions to dismiss the petitioner's habeas application for want of subject matter jurisdiction.

**Reversed**.