John Jairo DIOSA–ORTIZ, Petitioner,

v.

John ASHCROFT, Attorney General, Tom Ridge, Secretary, Department of Homeland Security, Michael J. Garcia, Acting Secretary, Bruce Chadbourne, Interim Field Office Director, Boston District, Bureau of Immigration and Customs Enforcement, Respondents.

No. Civ.A.03–12510–PBS.

United States District Court, D. Massachusetts.

July 21, 2004.

Randy Olen, Providence, RI, for Petitioner.

Frank Crowley, Michael P. Sady, United States Attorney's Office, Boston, MA, for Defendants and Respondents.

## MEMORANDUM AND ORDER

SARIS, District Judge.

### I. INTRODUCTION

Petitioner John Jairo Diosa–Ortiz, a native and citizen of Colombia, seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2241 to review his final order of deportation. He argues that the Immigration Judge ("IJ") and the Board of Immigration Appeals ("BIA") made clearly erroneous findings of fact in determining that he had abandoned his status as a lawful permanent resident when he left the country after deliberately avoiding his deportation proceedings. Respondents move to dismiss the petition, arguing that the Court lacks subject matter jurisdiction to entertain petitioner's claim because it does not involve a pure question of law. After hearing, respondents' motion to dismiss is **ALLOWED.**

### II. FACTUAL BACKGROUND

Petitioner entered the United States as a lawful permanent resident on July 4, 1981. On June 7, 1985, petitioner was convicted of conspiracy to possess with intent to distribute cocaine in the United States District Court for the Southern District of Florida, and was sentenced to three years of imprisonment.

While serving his sentence in Texas, on September 20, 1985, Diosa was served with an Order to Show Cause and placed into deportation hearings. Petitioner was

eventually released on a $10,000 bond. This bond required the bond obligor to present petitioner at the Immigration Court for a deportation hearing scheduled for February 25, 1987. Neither petitioner nor his attorney of record John Ruginksi appeared for this hearing, prompting the IJ to "administratively close" petitioner's case until the Immigration and Naturalization Service ("INS") could locate petitioner. (Pet.Ex. B.)[1] Petitioner claims that neither he nor his attorney received notice of the hearing.

On March 9, 1987, petitioner's bond obligor received a Form I–340 "Notice to Deliver Alien," which demanded that she surrender Diosa to INS custody at the INS office in El Paso on March 24, 1987 at 10:00 a.m. "for deportation." (Pet.Ex. C.)

Petitioner has submitted an exhibit which he identifies as the handwritten notes of INS Deportation Officer Rand Smith. On March 23, 1987, petitioner's new attorney Robert Watt[2] called the INS office and informed INS Deportation Officer Rand Smith that petitioner had not known about the previous hearing. (*See* Mem. Ex. E.) Officer Smith advised Watt that petitioner must appear for "re-calendaring" by the next day, March 24, but indicated the possibility of a one-day extension. The next day, March 24, Watt called again and obtained a twenty-four-hour extension of the hearing. (*Id.*)

Apparently, that same day, March 24, 1987, petitioner's old counsel Ruginski also called the INS in El Paso and informed Smith that he had not received notice of the February 25 hearing, and that he was

---

1. Unless otherwise noted, exhibits filed with the original petition will be labeled "Pet. Ex. _." Exhibits filed with petitioner's Response to Respondents' Motion to Dismiss Habeas Corpus Petition will be labeled "Mem. Ex. _."

2. Apparently, Attorney Watt also represented petitioner at the hearings before the IJ, after which the IJ ultimately determined that petitioner had abandoned his lawful permanent residence status.

preparing a motion to vacate the I–340 order of March 9. (*Id.*) Smith advised Ruginski that the IJ had relinquished jurisdiction of the case to the INS District Director. (*Id.*) Petitioner's wife also called Smith on March 24 to ask for relief for her husband. (*Id.*) When she offered to have her husband leave the United States, Smith informed her that petitioner's leaving would not automatically end the demand on the bond obligor. (*Id.*) Also on March 24, 1987, petitioner filed an Application for Stay of Deportation, signed by petitioner and Attorney Ruginski, stating that neither petitioner, his attorney, nor his obligor received notice of the February 25th hearing and that "if respondent had received notice of the hearing date, he would have attended the hearing, admitted the allegations, and submitted a petition for 212(c) relief." (Pet.Ex. D.) Petitioner did not show up for the rescheduled I–340 hearing on March 25. (Mem.Ex. E.)

On March 29, 1987, petitioner departed the United States for Colombia. Petitioner now claims he left because he believed he had already been ordered deported based on the I–340 form. After petitioner's departure, on April 17, 1987 the INS responded to the request for a stay of deportation by stating it was unnecessary since petitioner's case had been administratively closed and petitioner was not ordered deported. (Pet.Ex. E.) On April 21, 1987, Attorney Ruginski filed an appeal and request for return of the bond, claiming: (1) that the INS's position that there was never an order of deportation was contradicted by the I–340, which demanded that petitioner report for deportation; (2) that the demand for a surrender-departure was invalid because petitioner did not appear for his hearing; and (3) that the service had "failed to disprove the allegations" of petitioner, his attorney, and the obligor that they never received notice of the hearing. (Pet.Ex. F.) The Appeal also stated that petitioner had left the United States and "is residing in Colombia." (*Id.*)

Petitioner stayed in Colombia for 14 months. On May 1, 1988, Petitioner reentered the United States using a fraudulent passport in the name of Jaime Rivera. (Pet. Ex. G at 3.) In 1993, in connection with the investigation of another individual, petitioner came into contact with the INS, identifying himself as Jaime Rivera. Petitioner claims that as a result of this contact with the INS, he learned for the first time that he had never been ordered deported, and that his case had been administratively closed. The INS subsequently discovered petitioner's true identity as Diosa–Ortiz. On November 19, 1993, Petitioner was served with a new Order to Show Cause and placed in deportation proceedings.

On August 11, 1997, the BIA remanded petitioner's deportation proceedings to the IJ so that petitioner could establish his eligibility for a waiver of inadmissibility pursuant to Section 212(c) of the Immigration and Nationality Act. (Pet. Ex. G at 2.) At his reopened evidentiary hearing, petitioner argued that he was eligible for a Section 212(c) waiver of deportability. INS opposed petitioner's request for waiver on the ground that petitioner abandoned his lawful permanent residence status when he left the United States in 1987. On April 10, 2002, the IJ ordered petitioner deported, finding him statutorily ineligible for a 212(c) waiver because he is "not a returning resident alien returning from a temporary visit abroad." (Pet. Ex. G. at 14.) The IJ found that petitioner "abandoned that residence upon his departure from the United States in 1987 and returning to Colombia." (*Id.*) The IJ stated:

> Section 212(c) of the Immigration and Nationality Act requires that the respondent be a lawful permanent resident

alien of the United States. Since the respondent is not a lawful, permanent resident of the United States at this juncture, he is statutorily ineligible for a waiver of inadmissibility pursuant to Section 212(c) of the Immigration and Nationality Act.

(*Id.*) Based on the facts provided by Diosa–Ortiz (and his wife) during his hearing, the IJ found the following: (1) Diosa–Ortiz left the United States in 1987 with no intention of returning; (2) he had no property when he returned to the United States; (3) he did not appear before the Immigration Court in Texas for deportation proceedings because he did not want to be deported; (4) his attorney, John Ruginski, did not tell him he was deported but, rather, he told Petitioner that if he appeared before the Immigration Court in Texas he would be deported; (5) Diosa–Ortiz left the United States with no intention of returning in order to evade inevitable deportation; (6) he returned to the United States with a fraudulent passport in the name of Jaime Rivera; (7) while in Columbia, he obtained a job and worked to support his family; and (8) he and his wife, when they returned to Columbia, brought all of their belongings with them, not intending to return to the United States.

The BIA affirmed the IJ's decision on October 9, 2003:

We affirm the decision of the Immigration Judge with the following additions. We agree, with the Immigration Judge, that the respondent abandoned his lawful permanent resident status when he departed the United States in 1987, believing that he had been deported. The respondent argues, on appeal, that he mistakenly believed that he had been deported and that, as a result of this misunderstanding, he did not voluntarily abandon his lawful permanent resident status. However, we note that the respondent testified that he purposefully avoided his deportation proceedings, in September of 1985, because his attorney told him that he would likely be deported on account of his June 1985 conviction for conspiracy to possess with intent to distribute cocaine. After the hearing was administratively closed, when the respondent failed to appear, the respondent's sister-in-law, who had posted a bond assuring his appearance at his 1985 hearing, received a letter requesting that she present the respondent to the Department of Homeland Security (the "DHS", formerly the Immigration and Naturalization Service) in San Antonio. The respondent indicated that, because he did not appear for his 1985 deportation proceedings, and because he did not report to San Antonio, he understood that he had been deported. In sum, we cannot find that the respondent was inappropriately misled, regarding his immigration status. Thus, we find that the voluntariness of his departure was not undermined by his misunderstanding regarding his status. Rather, his misunderstanding regarding his status was due, in large part, to his refusal to present himself to the Immigration Court and the DHS as required. Thus, we find that, as the respondent departed the United States after deliberately avoiding his deportation proceedings and after choosing not to present himself to the DHS, and as he intended not to return to the United States, the respondent voluntarily abandoned his permanent resident status.

(Pet.Ex. H) (citations omitted).

Petitioner filed the instant habeas corpus petition on December 15, 2003.

## III. DISCUSSION

### A. Habeas Jurisdiction

Federal courts have "subject matter jurisdiction over habeas petitions brought by

aliens facing removal to the extent that those petitions are based on colorable claims of legal error, that is, colorable claims that an alien's statutory or constitutional rights have been violated." *Carranza v. INS*, 277 F.3d 65, 71 (1st Cir.2002). A court lacks habeas jurisdiction to evaluate claims "grounded solely in the INS's failure to exercise its prosecutorial discretion." *Id.*

■ Pure issues of law may be raised in habeas petitions. *See INS v. St. Cyr*, 533 U.S. 289, 302, 121 S.Ct. 2271, 150 L.Ed.2d 347 (2001) (noting historical use of writ to challenge detentions based on "errors of law, including the erroneous application or interpretation of statutes"); *Demore v. Kim*, 538 U.S. 510, 516–17, 123 S.Ct. 1708, 155 L.Ed.2d 724 (2003) (upholding use of habeas to challenge on constitutional grounds the "statutory framework" permitting detention without bail); *Saint Fort v. Ashcroft*, 329 F.3d 191, 203 (1st Cir. 2003) (quoting *Goncalves v. Reno*, 144 F.3d 110, 113 (1st Cir.1998)) (holding that federal courts possess habeas jurisdiction over claims arising under implementing legislation and regulations of the Convention Against Torture). "[I]f a statute makes an alien eligible to be considered for a certain form of relief, he may raise on habeas the refusal of the agency to even consider him." *Id.*

■ Generally, habeas courts are precluded from reviewing the agency's factual findings. *See St. Cyr*, 533 U.S. at 311–14, 121 S.Ct. 2271 (contrasting scope of inquiry on "habeas corpus" with "judicial review" in immigration context); *Goncalves*, 144 F.3d at 125 (contrasting habeas review with administrative review available under old Immigration and Nationality Act § 106 and noting "we are not being asked to review and reverse the manner in which discretion was exercised by examining the evidence in the record

supporting or undermining the alien's claim to discretionary relief.") (internal citations omitted). *See also Carranza*, 277 F.3d at 72 n. 6 ("Purely legal questions are suitable for habeas review because answering them does not necessitate second-guessing the agency's factual findings or the Attorney General's exercise of her discretion.") (citations omitted); *Sol v. INS*, 274 F.3d 648, 651 (2d Cir.2001) (where petitioner "does not raise a statutory or constitutional claim" but "simply contends that the decisions of the IJ and the BIA lacked adequate support in the record," his claim would necessitate fact-intensive reassessment of the evidence, which is "vastly different from what the habeas statute plainly provides: review for statutory or constitutional errors."); *Bowrin v. INS*, 194 F.3d 483, 490 (4th Cir.1999) (emphasizing that "[o]nly questions of pure law will be considered on § 2241 habeas review. Review of factual or discretionary issues is prohibited."); *Lopez v. Ashcroft*, 267 F.Supp.2d 150, 152–53 (D.Mass.2003) (dismissing habeas petition seeking review of agency's denial of motion to reopen case where legal determination required by statute "demands extensive factual inquiry"). *Cf. St. Cyr*, 533 U.S. at 298, 121 S.Ct. 2271 (Petitioner's "application for a writ raises a pure question of law. He does not dispute any of the facts that establish his deportability or the conclusion that he is deportable.").

■ A court can, however, review the BIA's application of the particular facts to the relevant law. *See Wang v. Ashcroft*, 320 F.3d 130, 143 (2d Cir.2003) ("Wang's argument on appeal challenging the BIA's application of the particular facts in this case to the relevant law falls within the permissible scope of habeas review.").

### B. Section 212(c) Relief

■ Petitioner's statutory claim is grounded in former Section 212(c) of the

Immigration and Nationality Act of 1952. Prior to its repeal in 1996,[3] this statute granted the Attorney General broad discretion to admit excludable aliens, including those convicted of offenses involving the illicit traffic in narcotics. *See St. Cyr,* 533 U.S. at 294–97, 121 S.Ct. 2271. That proviso, codified at 8 U.S.C. § 1182(c), stated:

> Aliens lawfully admitted for permanent residence who temporarily proceeded abroad voluntarily and not under an order of deportation, and who are returning to a lawful unrelinquished domicile of seven consecutive years, may be admitted in the discretion of the Attorney General.

Former 8 U.S.C. § 1182(c) (repealed by the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA")). *See Sol v. INS,* 274 F.3d 648, 649 n. 3 (2d Cir.2001) (noting that attorney general's "broad discretion" under former section 212(c) was repealed by IIRIRA in September 1996). Section 212(c) has been interpreted by the BIA "to authorize any permanent resident alien with a lawful unrelinquished domicile of seven consecutive years to apply for a discretionary waiver of deportation." *St. Cyr,* 533 U.S. at 295, 121 S.Ct. 2271 (citations omitted).

 The issue of whether petitioner was a permanent resident alien with a lawful, unrelinquished domicile of seven consecutive years depends on whether he meets the requirements of a "returning resident immigrant." *Chavez–Ramirez v. INS,* 792 F.2d 932, 933 n. 2 (9th Cir.1986). Such an immigrant must be "lawfully admitted for permanent residence … returning from a temporary visit abroad." *Id.;* 8 U.S.C. § 1101(a)(27)(A). The INS bears the burden of proving abandonment by clear, unequivocal and convincing evidence. *See Woodby v. INS,* 385 U.S. 276, 286, 87 S.Ct. 483, 17 L.Ed.2d 362 (1966) (holding that no deportation order may be entered unless it is found by "clear, unequivocal and convincing evidence that the facts alleged as grounds for deportation are true."). The IJ must review several objective factors in evaluating subjective intent, including the alien's family ties, property holdings, business affiliations in the United States as well as the alien's family, property and business in the foreign country. *See Singh v. Reno,* 113 F.3d 1512, 1514–15 (9th Cir.1997) ("[A]n alien's desire to retain his status as a permanent resident, without more, is not sufficient; his actions must support his professed interest."). The court has to determine whether the alien had "an intent to depart in a manner which can be regarded as meaningfully interruptive of the alien's permanent residence." *Rosenberg v. Fleuti,* 374 U.S. 449, 461, 83 S.Ct. 1804, 10 L.Ed.2d 1000 (1963) (holding that an "innocent, casual and brief" excursion[4] by a

---

3. In 1996, Congress passed the Antiterrorism and Effective Death Penalty Act ("AEDPA"), which made all aggravated felons ineligible for Section 212(c) relief. *See* Pub.L. No. 104–132, § 440(d), 110 Stat. 1214, 1277 (1996) (amending 8 U.S.C. § 1182(c)). Later in 1996, Congress passed the Illegal Immigration Reform and Immigrant Responsibility Act ("IIRIRA"), which eliminated the Section 212(c) waiver entirely, and replaced it with a new section, 8 U.S.C. § 1229b, that gives the Attorney General authority to cancel removal for certain inadmissible or deportable aliens.

*See* Pub.L. No. 104–208, § 304(b), 110 Stat. at 3009–594, 3009–597.

4. The so-called *Fleuti* Doctrine—that an "innocent, casual and brief" departure from this country does not constitute a break in a alien's physical presence—has been superseded by IIRIRA which provides that any absence outside the country for more than 90 days at a time, or 180 days in total, breaks the physical presence requirement. 8 U.S.C. § 1229b(d)(2). *See generally Tapia v. Ashcroft,* 351 F.3d 795, 799 (7th Cir.2003). No one has argued that IIRIRA should be applied

resident alien outside the country's borders for four hours may not be considered a departure disruptive of his resident alien status).

Courts have noted that "[c]onclusions regarding an alien's intent are essentially factual." *Moin v. Ashcroft,* 335 F.3d 415, 418 (5th Cir.2003) (citing *Chavez–Ramirez,* 792 F.2d at 934–35) (affirming, on direct review, IJ's finding that alien abandoned her lawful permanent residence where "reasonable, substantial, and probative evidence on the record, considered as a whole, supports the decision's factual findings"). *See also Singh,* 113 F.3d at 1514–15 (listing factors to be considering in evaluating the alien's "continued, uninterrupted intention to return to the United States during the entirety of his . . . temporary visit abroad").

As respondents point out, the IJ did not refuse to consider altogether petitioner's request for relief under Section 212(c). Rather, the IJ acknowledged that "the Government has lodged an allegation contending that the respondent abandoned his lawful, permanent resident status in the United States" and that "that issue is to be resolved to determine whether the respondent is eligible for a waiver of inadmissibility pursuant to Section 212(c) of the Immigration and Nationality Act." (Pet. Ex. G at 7.) The IJ held several hearings at which petitioner and his wife testified, and ultimately concluded that "the respondent's departure from the United States in 1987, where he returned to Colombia to avoid deportation, and resided in Colombia for 13 or 14 months until he returned to the United States as a tourist, constitutes an abandonment of his lawful, permanent resident status in the United States." (*Id.*

at 13.) In reaching his conclusions, the IJ noted, among other things, petitioner's testimony that when he left the United States in 1987, he had no intention of returning to the United States and that he returned to the United States with a fraudulent passport and a tourist visa. (*Id.* at 12–13.)

Petitioner argues that his leaving the United States in 1987 was not voluntary and was induced by misinformation provided to him by the Immigration and Naturalization Service. *See Tejeda v. INS,* 346 F.2d 389, 393 (9th Cir.1965) (holding that a poorly-educated alien would be eligible for relief if it is shown he was actually and reasonably misled by the affirmative acts and misstatements of a well-informed official of the United States government); *McLeod v. Peterson,* 283 F.2d 180, 184 (3d Cir.1960) ("Where it can be shown convincingly that fundamental errors have been committed in prior proceedings of the type here involved, and where a holding that the individual litigant was bound by the failures of his counsel or of the officials involved would result in a gross miscarriage of justice, such proceedings should be reopened and appropriate corrective measures taken.").

■ Petitioner casts this dispute as a due process challenge. While the lack of notice of the February 25 hearing would have raised due process concerns, no deportation order actually resulted as a result of the notice problem. Any error in the notice to the bond obligor was cured in subsequent discussions by *two* separate attorneys with an INS official who agreed to recalendar the hearing after the attorneys stated the alien never received proper notice. Under these circumstances, the er-

retroactively to govern petitioner who left and then returned long before IIRIRA's enact-

ment. I do not address the impact, if any, of IIRIRA, which no one has briefed.

ror in the notice to the bond obligor did not rise to the level of an affirmative misrepresentation upon which petitioner could reasonably rely. *Both* of his attorneys were informed of the second hearing. Despite petitioner's argument in his brief that if had received notice of the original hearing date, he would have attended and submitted a petition for 212(c) relief, neither petitioner nor either of his attorneys appeared on March 25 to make this request.

Citing extensively from the transcripts, petitioner argues that the IJ's and BIA's determination of abandonment is not supported by the record. He contends that the IJ's fact-finding that he left the United States in order to avoid an order of deportation was clearly erroneous. This requested fact-review is "vastly different from what the habeas statute plainly provides: review for statutory or constitutional errors." *Sol,* 274 F.3d at 651.

■ Because there was no due process violation and the petition does not involve a pure question of law, the Court does not have habeas jurisdiction.

## IV. *ORDER*

Respondents' motion to dismiss (Docket No. 3) is *ALLOWED.*