Michael A.R. SEALE, Petitioner,
Appellant,

v.

IMMIGRATION AND NATURAL-
IZATION SERVICE, Respon-
dent, Appellee.

No. 02–1431.

United States Court of Appeals,
First Circuit.

Heard Jan. 8, 2003.

Decided March 14, 2003.

Albert F. Cullen, Jr., for appellant.

Mary Jane Candaux, Office of Immigration Litigation, Civil Division, United States Department of Justice, with whom Robert D. McCallum, Jr., Assistant Attorney General, Civil Division, David V. Bernal, Assistant Director, and Ernesto H. Molina, Jr., were on brief for appellee.

Before TORRUELLA, Circuit Judge, CAMPBELL and STAHL, Senior Circuit Judges.

LEVIN H. CAMPBELL, Senior Circuit Judge.

The Appellant, Michael Seale ("Seale"), appeals from the dismissal of his habeas petition. Seale, an alien, petitioned the district court for a writ of habeas corpus pursuant to 28 U.S.C. § 2241 (1994 & Supp. V), asserting that the order of removal (deportation) lodged against him based on a 1987 aggravated felony conviction constituted an improper retroactive application of the current immigration statute and a violation of the constitutional protections contained in the Ex Post Facto and Double Jeopardy Clauses. Rejecting the Immigration and Naturalization Services' ("INS") contention that the court lacked subject matter jurisdiction over Seale's petition, the district court ruled both that it had jurisdiction and that Seale's statutory and constitutional objections to his order of removal were without merit. We affirm, concluding that our decision in *Sousa v. INS*, 226 F.3d 28 (1st Cir.2000), foreordains the outcome on the merits. Because, under principles of stare decisis, our decision in *Sousa* is controlling, we need not and do not determine the more difficult and novel issue of whether or not the district court had subject matter jurisdiction under 28 U.S.C. § 2241.

## I. Background

In 1980, Seale, a native of Barbados, was admitted to the United States as a permanent resident. On October 28, 1987, he was convicted in Plymouth Superior Court, a Massachusetts state court, of assault with intent to murder and was sentenced to a ten-year term of imprisonment. On November 6, 1997, the INS commenced removal proceedings against Seale, alleging removability as an alien convicted of an aggravated felony pursuant to 8 U.S.C. § 1227(a)(2)(iii) (1999). On April 20, 1999, an immigration judge determined Seale to be removable. Seale appealed from that decision to the Board of Immigration Appeals ("BIA"). On October 6, 1999, the BIA dismissed the appeal. Seale did not

appeal from the BIA's determination to the United States Court of Appeals as permitted under 28 U.S.C. § 1252 (1999). *See Sousa,* 226 F.3d at 31.

On November 29, 1999, Seale brought a federal habeas petition pursuant to 28 U.S.C. § 2241 challenging the order of deportation on statutory and constitutional grounds. Seale contends that he is not deportable as a matter of statutory and constitutional law because the Illegal Immigration Reform and Immigrant Responsibility Act of 1996, Pub.L. No. 104–208, Div. C., tit. III–B, 110 Stat. 3009–546 ("IIRIRA"), provision requiring the deportation of aggravated felons may not be applied retroactively. According to Seale, Congress did not make clear its intent to require the removal of aliens convicted of aggravated felonies prior to November 18, 1988, the date that the term "aggravated felony" first entered the immigration lexicon. He further argues that the order of removal violates the Ex Post Facto Clause and the Double Jeopardy Clause.

The INS moved to dismiss the habeas petition arguing that the district court lacked subject matter jurisdiction to hear the petition and, in any event, that the petition lacked merit. While the district court determined that it had subject matter jurisdiction, it concluded that Seale's substantive arguments failed as a matter of law. Seale thereupon filed a timely notice of appeal.

## II. Discussion

### A. Subject Matter Jurisdiction

■ Given the Supreme Court's recent admonishment that federal courts should, in most cases, avoid reaching the merits of a case prior to determining their subject matter jurisdiction, *Steel Co. v. Citizens for a Better Env't,* 523 U.S. 83, 118 S.Ct. 1003, 140 L.Ed.2d 210 (1998), our decision, *see infra,* not to address the district court's conclusion that it had habeas jurisdiction warrants explanation.[1] The basis of that decision is twofold: (1) the question of whether the district court has subject matter jurisdiction is close and, for us, one of first impression; and (2) precedent already existing in this circuit, in particular *Sousa,* 226 F.3d at 33–34, conclusively resolves against Seale his objections to the order of removal; our merits ruling here is thus "foreordained" and does not create new precedent. In such circumstances, the rule in *Steel Co.* requiring a definitive jurisdictional assessment may be circumvented, *see infra.*

The INS contends that the district court lacks subject matter jurisdiction to hear Seale's claims under 28 U.S.C. § 2241 because Congress, when it enacted IIRIRA placed jurisdiction exclusively in the courts

---

1. The INS did not file a cross appeal contesting the district court's determination that it had jurisdiction to hear Seale's habeas petition concerning these claims. Generally, a party seeking to preserve a point for appellate review must, *inter alia,* file a notice of appeal and offer developed argumentation in support. *See, e.g., United States v. Bongiorno,* 106 F.3d 1027, 1034 (1st Cir.1997); *see also* Fed. R.App. P. 3(a) ("An appeal permitted by law as of right from a district court ... may be taken only by filing a notice of appeal with the district clerk...."). A party who fails to raise a particular claim or defense on appeal normally waives the right for it to be considered. *See Irving v. United States,* 162 F.3d 154, 160 (1st Cir.1998). The waiver-rule does not apply to subject matter jurisdiction, however. *See United States v. Cotton,* 535 U.S. 625, 122 S.Ct. 1781, 1782, 152 L.Ed.2d 860 (2002) ("Because subject-matter jurisdiction involves a court's power to hear a case, it can never be forfeited or waived. Thus, defects in subject-matter jurisdiction require correction regardless of whether the error was raised in district court."); *United States v. Gonzalez,* 311 F.3d 440, 441 (1st Cir.2002) ("[A] court is expected to raise the subject-matter jurisdiction objection on its own motion at any stage and even if no party objects.").

of appeals for review of final orders of removal. *See* 8 U.S.C. 1252(a)(1); 28 U.S.C. § 2342 (1994 & Supp. VI). The INS argues that notwithstanding the jurisdiction-stripping language of 8 U.S.C. § 1252(a)(2)(C)[2], Seale's statutory and constitutional claims regarding his status as an aggravated felon could have been decided (had Seale sought direct review) by the court of appeals, as part of its jurisdictional inquiry relative to review of the final order. This being so, the INS says there is no justification for us to find the existence of habeas jurisdiction over the same order of removal, given Congress's vesting of exclusive jurisdiction over final removal orders in the courts of appeals, *see* § 1252(a)(1), and its express denial to courts of jurisdiction over deportation orders against an alien removable for committing an aggravated felony. *See* § 1252(a)(2)(C).

Neither the Supreme Court nor this court has had occasion to decide whether the district court has habeas jurisdiction over a removal order where an alien's objection to the order would also have been susceptible to adjudication in the courts of appeals in a statutory direct review proceeding. A majority of the Supreme Court has ruled, when no substitute process was available, that the district court retained habeas jurisdiction under 28 U.S.C. § 2241 to review an alien's objections to a final order of removal. *INS v. St. Cyr*, 533 U.S. 289, 314, 121 S.Ct. 2271, 150 L.Ed.2d 347 (2001). The *St. Cyr* Court stated that "a serious Suspension Clause issue would be presented if we were to accept the INS's submission that the 1996 statutes have withdrawn [habeas] power from federal judges and provided no

adequate substitute for its exercise." *Id.* at 305, 121 S.Ct. 2271. The Court went on to state:

> If it were clear that the question of law could be answered in another forum, it might be permissible to accept the INS' reading of § 1252. But the absence of such a forum, coupled with the lack of clear, unambiguous, and express statement of congressional intent to preclude judicial consideration on habeas of such an important question of law, strongly counsels against adopting a construction that would raise serious constitutional questions.

*Id.* at 314, 121 S.Ct. 2271. In this circuit's case of *Carranza v. INS*, 277 F.3d 65 (1st Cir.2002), the case relied on by the district court to support habeas jurisdiction here, we determined that the alien's complaints were beyond our own jurisdiction and transferred the matter to the district court for consideration in the form of a habeas petition. *Id.* at 67.

In arguing now that, despite the prohibition of § 1252(a)(2)(C), Seale's claims could have been adjudicated by this court on direct review of a final order, the INS relies upon holdings of this and other circuits that permit the courts of appeal to adjudicate those factors needed to trigger the jurisdiction-stripping provision in aggravated felony cases. *Sousa*, 226 F.3d at 31 (citing cases); *Mahadeo v. Reno*, 226 F.3d 3, 9 (1st Cir.2000). We have held that a court of appeals should determine, as a threshold matter, if the alien is within the category of aliens removable because of conviction for a qualifying crime. *Sousa*, 226 F.3d at 31; *Fierro v. Reno*, 217 F.3d 1, 3 (1st Cir.2000).[3] If not—as Seale

---

**2.** 8 U.S.C. § 1252(a)(2)(C) provides, in pertinent part, that "[n]otwithstanding any other provision of law, no court shall have jurisdiction to review any final order of removal

against an alien who is removable" for committing an aggravated felony.

**3.** As noted by the Supreme Court, the government conceded that § 1252(a)(2)(C), although

contends is so here, because his conviction predates the laws deporting aliens for aggravated felonies—the courts of appeals retain the power under 8 U.S.C. § 1252 to stay deportation. Only if found to be an alien properly removable for an aggravated felony would Seale fit within the exception of § 1252(a)(2)(C) stripping the courts of any further review jurisdiction. Like courts in other circuits, we have in fact adjudicated contentions like Seale's upon direct review of a final order of removal. *Sousa,* 226 F.3d at 31 (concluding that § 1252(a)(2)(C) is not a "bar to our considering Sousa's claim that he is not removable as an aggravated felon" as part of our jurisdictional inquiry); *see also Bell v. Reno,* 218 F.3d 86, 89 (2d Cir.2000).

Whether, therefore, the district court now has habeas jurisdiction turns on whether the ability of the court of appeals to have adjudicated Seale's claim in a direct review proceeding has the effect of eliminating habeas corpus as an alternate remedy. At least one of the circuit courts has answered "no" to this question, holding insufficient the mere availability of jurisdictional review in the courts of appeals. *See Kuhali v. Reno,* 266 F.3d 93, 100–01 (2d Cir.2001). In support of this outcome, we note that the *St. Cyr* majority did not rest solely on the fact that the petitioner there would have no remedy without habeas corpus, but also held that the language in 8 U.S.C. § 1252(a)(2)(C) depriving any court of "jurisdiction to review" final removal orders was insufficient to indicate a congressional intent to eliminate the his-

toric remedy of habeas corpus. 533 U.S. at 311–312.

Given the strong arguments on both sides, it is by no means a clear call whether the district court possesses jurisdiction here. It is undisputed that the claims Seale presented in his habeas petition could have been adjudicated in the court of appeals as part of a threshold jurisdictional inquiry. This being so, the serious constitutional questions raised in *St. Cyr* by the lack of any judicial forum to adjudicate the merits of the petitioner's claim are not at issue here. At the same time, we recognize that the *St. Cyr* majority was also concerned with the absence of an unambiguous, express statement by Congress that it intended to preclude habeas jurisdiction in this context. The question remains open whether the existence of another available judicial forum to adjudicate the merits of an alien's claim overrides the absence of a clear statement by Congress that it intended to strip the district courts of their habeas jurisdiction.

A decade or so ago, we would not have hesitated to bypass this complex jurisdictional question where, as here, *see infra,* the case can be affirmed on a clearer and more certain merits ground. *See United States v. Parcel of Land,* 928 F.2d 1, 4 (1st Cir.1991) (stating "when the case can be alternatively resolved on the merits in favor of the same party, difficult questions of jurisdiction can be avoided by reaching the merits."), *overruled in part by Steel Co.,* 523 U.S. 83, 118 S.Ct. 1003, 140 L.Ed.2d 210. The Supreme Court, however, has

broadly worded, necessarily allows some judicial decision making in otherwise prohibited cases. *Calcano–Martinez v. INS,* 533 U.S. 348, 350 n. 2, 121 S.Ct. 2268, 150 L.Ed.2d 392 (2001). During the *Calcano–Martinez* litigation the INS acknowledged that the "courts of appeals have the power to hear petitions challenging the factual determinations thought to trigger the jurisdiction-strip-

ping provision ..." and have "retain[ed] jurisdiction to review 'substantial constitutional challenges' raised by aliens who come within the strictures of § 1252(a)(2)(C)." *Id.* Other than noting the INS' position, the Supreme Court declined to comment further "as the petitions in this case do not raise any of these types of issues...." *Id.*

questioned this approach. *Steel Co.*, 523 U.S. 83, 118 S.Ct. 1003, 140 L.Ed.2d 210. In *Steel Co.* the Supreme Court "decline[d] to endorse such an approach because it carries the courts beyond the bounds of authorized judicial action and thus offends fundamental principles of separation of powers." *Id.* at 94, 118 S.Ct. 1003. By requiring a court to address jurisdictional questions prior to reaching the merits of a case, the Court sought to prevent appellate courts from rendering advisory opinions. *Id.* at 101, 118 S.Ct. 1003. According to the Court "[h]ypothetical jurisdiction produces nothing more than a hypothetical judgment—which comes to the same thing as an advisory opinion, disapproved by this Court from the beginning." *Id.* at 101, 118 S.Ct. 1003.

Despite sweeping language, however, *Steel Co.* does not, in all instances, create an absolute rule against bypassing questions of a jurisdictional nature. *See Parella v. Ret. Bd. of the R.I. Employees' Ret. Sys.*, 173 F.3d 46, 53–54 (1st Cir.1999). The *Steel Co.* majority distinguished, rather than overruled, earlier precedent in which the Court had deferred questions of jurisdiction and proceeded directly to the merits. *Steel Co.*, 523 U.S. at 98, 118 S.Ct. 1003 (citing *Norton v. Mathews*, 427 U.S. 524, 96 S.Ct. 2771, 49 L.Ed.2d 672 (1976) and *Sec'y of Navy v. Avrech*, 418 U.S. 676, 94 S.Ct. 3039, 41 L.Ed.2d 1033 (1974) (per curiam)). By way of distinguishing *Norton* and *Avrech*, the Court pointed out that, in both cases, the outcome had been "foreordained" by the Court's previous rulings. *Id.* at 98–99, 118 S.Ct. 1003. Thus, the Court had not used "the pretermission of the jurisdictional question as a device for reaching a question of law that otherwise would have gone unaddressed." *Id.* at 98, 118 S.Ct. 1003. The *Steel Co.* Court implicitly recognized, therefore, as one exception to its rule, that where the merits outcome was predetermined by previous rulings, a court could properly defer deciding the jurisdiction question. In keeping with this implied exception, the Second Circuit has deferred resolving a thorny issue of Article III standing when controlling circuit precedent "foreordained" the outcome. *See Ctr. for Reprod. Law and Policy v. Bush*, 304 F.3d 183, 194–95 (2d Cir.2002).

Our circuit has not yet dealt with the exception discussed in *Bush*, but, as noted, we have made clear our agreement with the Second Circuit that *Steel Co.* did not lay down an "absolute rule." *Parella*, 173 F.3d at 53–54. Like the *Bush* court, we have also observed that two of the Justices on which Justice Scalia's five-Justice majority depended issued a concurring opinion expressing a more permissive view towards the practice of assumed jurisdiction. *See Steel Co.*, 523 U.S. at 110–11, 118 S.Ct. 1003 (O'Connor, J., concurring, joined by Kennedy, J.). Justice O'Connor, joined by Justice Kennedy, stated that the "Court's opinion should not be read as cataloguing an exhaustive list of circumstances under which federal courts may exercise judgment in reserving difficult questions of jurisdiction when a case alternatively could be resolved on the merits in favor of the same party." *Id.; see also id.* at 111, 118 S.Ct. 1003 (Breyer, J., concurring in part and concurring in judgment) (noting with approval that "[t]his Court has previously made clear that courts may 'reserv[e] difficult questions of . . . jurisdiction when the case could alternatively be resolved on the merits in favor of the same party.' ").

Consonant with the above, our Circuit has refused to apply the *Steel Co.* formulation to issues of an arguably jurisdictional nature not directly dependent on Article III. *See Kelly v. Marcantonio*, 187 F.3d 192, 197 (1st Cir.1999) (denying need for an initial inquiry into a First Amendment question); *Parella*, 173 at 56 (bypassing

question of availability of Eleventh Amendment immunity); *see also United States v. Woods*, 210 F.3d 70, 73 n. 2 (1st Cir.2000) (bypassing matter of timeliness of notice of appeal under Fed. R.App. P. 4).

Although *Parella* dealt only with whether the *Steel Co.* rule should be extended to an Eleventh Amendment immunity claim, the panel stated broadly in its opinion that the *Steel Co.* requirement was limited to cases raising the question of Article III rather than "statutory jurisdiction." This comment stemmed from a complicated and not entirely clear distinction made in the course of Justice Scalia's opinion, suggesting that questions of Article III standing must be decided before the merits but that certain types of statutory standing need not be. *See Steel Co.*, 523 U.S. at 96–97 & n. 2, 118 S.Ct. 1003 (discussing *Nat'l R.R. Passenger Corp. v. Nat'l Ass'n of R.R. Passengers*, 414 U.S. 453, 94 S.Ct. 690, 38 L.Ed.2d 646 (1974)). Were we to extend, in literal fashion, our remark in *Parella* to the present case, it could be argued that the issue of subject matter jurisdiction under 28 U.S.C. § 2241 was a question of "statutory jurisdiction," hence one that did not fall at all within the *Steel Co.* strictures.

Such an application of *Steel Co.* would, in this context, however, raise potential problems. The term "statutory jurisdiction" is susceptible to a wide variety of construc-tions; it is arguable that Justice Scalia did not mean to exempt from the ruling in *Steel Co.* the kind of statutory jurisdictional issue raised here.[4] While the language of the *Steel Co.* majority is less than clear, it may be that a jurisdictional question as fundamental as whether or not Congress has repealed the district court's habeas corpus jurisdiction was meant to be subject to the order of analysis provided by Steel Co. *See* 523 U.S. at 101, 118 S.Ct. 1003 ("The *statutory* and (especially) con-stitutional elements of jurisdiction are an essential ingredient of separation and equi-libration of powers, restraining the courts from acting at certain times, and even restraining them from acting permanently regarding certain subjects. For a court to pronounce upon the meaning of or the constitutionality of a state or federal law when it has no jurisdiction to do so is, by very definition, for a court to act ultra vires." (citations omitted) (emphasis sup-plied)). As courts created by statute, we "can have no jurisdiction but such as the statute confers." *Sheldon v. Sill*, 49 U.S. 441, 449, 8 How. 441, 12 L.Ed. 1147 (1850). A federal court acts "ultra vires" regard-less of whether its jurisdiction is lacking because of the absence of a requirement specifically mentioned in Article III, such as standing or ripeness, or because Con-gress has repealed its jurisdiction to hear a particular matter. *Steel Co.*, 523 U.S. at 101, 118 S.Ct. 1003.[5]

---

**4.** Justice Scalia's discussion of statutory juris-diction versus Article III jurisdiction was lim-ited to questions of standing. *Steel Co.*, 523 U.S. at 97, 118 S.Ct. 1003. According to Justice Scalia, a court could decide a case on the merits prior to addressing questions of statutory standing. The Court reasoned that because merit questions and the statutory standing inquiry often overlap and are some-times identical a court is unlikely to provide opinions on issues not properly before them. *Id.* at n. 2, 118 S.Ct. 1003. In contrast, the question of whether Congress repealed the district court's habeas jurisdiction when it passed IIRIRA is wholly unrelated to the mer-its of Seale's habeas petition. Thus, the rea-soning relied on by the *Steel Co.* majority to distinguish statutory standing from Article III standing does not readily apply to the juris-dictional issue currently before us.

**5.** Article III, of course, expressly refers to federal statutes as one basis for conferring subject matter jurisdiction upon federal courts. *See* U.S. Const. Art. III, § 2 ("The judicial Power shall extend to all Cases, in

Given the above concerns and given the relevance to the present case of the simpler and less questionable rationale set out in the Second Circuit's *Bush* ruling, we opt to proceed under the latter. Under *Bush,* we need be satisfied—as we are, *infra*— that this court's prior case law "foreordains" the outcome on the merits, so as to deny recovery. If so, as the *Bush* court demonstrated, *Steel Co.* undoubtedly permits us to avoid deciding in advance the difficult question of the district court's subject matter jurisdiction. Hence, even supposing the statutory nature of the current jurisdictional question would be an adequate basis for circumventing the *Steel Co.* rule (a matter we leave open), we can reach the same result here by a far less complicated and controversial route. As Judge Walker noted in *Bush*, "[w]here the precise merits question has already been decided in another case by the same court, it is the adjudication of the standing question that resembles an advisory opinion— the very concern that animates the *Steel Co.* rule." 304 F.3d at 195.

As discussed more fully below, this court's precedent in *Sousa* foreordains the outcome on the merits here. Given this, we postpone until some other day the difficult and, for present purposes, unnecessary question of the district court's subject matter jurisdiction. Assuming the district court had subject matter jurisdiction, petitioner clearly loses on the merits of his claims. And of course, if the district court lacked jurisdiction, petitioners claim will, of necessity, be dismissed. In either event, the INS's order of removal stands.

Law and Equity, arising under this Constitution, the Laws of the United States, and Treaties made...."). While the Constitution defines the limits of judicial power, it is up to Congress to prescribe how much of it shall be exercised by the lower courts. *Sill*, 49 U.S. at 449.

## III. Merits

Seale contends that he is not deportable as a matter of statutory and constitutional law because IIRIRA's provision requiring the deportation of aggravated felons cannot be applied retroactively. According to Seale, when Congress enacted IIRIRA it intended only to deport aliens whose date of conviction for an aggravated felony was on or after November 18, 1988, the effective date of the Anti–Drug Abuse Act, Pub.L. No. 100–690, 102 Stat. 4181 ("ADAA"), which first made an aggravated felony a deportable offense. Seale contends that Congress never repealed ADAA § 7344(b)'s directive that the aggravated felony ground be applied prospectively.[6] As a result, Seale alleges, the retroactive application of the statute is an error in statutory construction and violates the Ex Post Facto and Double Jeopardy Clauses of the Constitution.

To understand Seale's statutory construction claim, a brief review of the relevant statutes is helpful. The term "aggravated felony" first entered the immigration lexicon when Congress passed the ADAA on November 18, 1988. An aggravated felony was defined as "murder, any drug trafficking crime ... or any illicit trafficking in any firearms or destructive devices...." ADAA § 7342. There was no effective date attached to the definition of aggravated felony. However, Congress included a temporal limitation in the section setting out the various grounds for deportation. Aliens convicted of an aggravated felony "after the date of enactment of this Act" were deportable. ADAA § 7344(a)-

6. Section 7344(b) states that the deportation based on an aggravated felony "shall apply to any alien who has been convicted on or after the date of the enactment of this Act." This section was codified at 8 U.S.C. § 1252 note.

(b). Because Seale's attempted murder conviction would not have come within the ADAA's definition of an "aggravated felony" and the conviction occurred prior to 1988, he did not become deportable by virtue of the passage of the ADAA.

In 1990, Congress enacted the Immigration Act of 1990, Pub.L. No. 101–649, 104 Stat. 4978 ("IMMAct"). According to the legislative history, Congress intended to "provide for a comprehensive revision of all the existing grounds for deportation." Congress broadened the definition of aggravated felony to include "any crime of violence (as defined in section 16 of title 18 of the [USC], not including a purely political offense) for which the term of imprisonment imposed (regardless of any suspension of such imprisonment) is at least 5 years." IMMAct § 501(a)(3). The broadened definition, however, was to apply prospectively only. *See id.* § 501(b) (stating that the amendments contained in subsection (a)(3) were to apply "to offenses committed on or after the date of enactment of this Act [Nov. 29, 1990]"). In the revised grounds for deportations the IMMAct declared that "[a]ny alien who is convicted of any aggravated felony at any time after entry is deportable." *Id.* § 602(a)(2)(A)(iii). Section 602(d) stated that the amendments made to the removal provisions "shall not apply to deportation proceedings for which notice has been provided to the alien before March 1, 1991."

Seale was likewise unaffected by the enactment of IMMAct. Although the crime for which he had been convicted fit within the description of a "crime of violence," an aggravated felony, and one for which he received a term of imprisonment of ten years, the broadened definition did not apply to convictions that occurred prior to November 29, 1990.

In 1996, Congress enacted IIRIRA. Congress once again further broadened the definition of aggravated felony. *See* IIRIRA § 321. And for the first time it stated that the definition was to apply retroactively: "Notwithstanding any other provision of law (including any effective date), the term applies regardless of whether the conviction was entered before, on, or after the date of enactment of this Act." *Id.* § 321(b). The amended definition also included an effective date: "The amendments made by this section shall apply to actions taken on or after the date of enactment of this Act, regardless of when the conviction occurred...." *Id.* § 321(c).

Based on the various provisions discussed above, Seale contends that while Congress, when it enacted IIRIRA, clearly intended to make the broadened definition of "aggravated felony" apply retroactively regardless of the date of conviction, Congress did not make a similarly clear pronouncement regarding the retroactive application of aggravated felony as a ground for deportation. According to Seale, § 7344(b) of the ADAA, stating that convictions for aggravated felonies can only be used as a grounds for deportation if the convictions occurred on or after November 18, 1988, is still in effect.

However, this court's decision in *Sousa* provides a definitive answer to the question of whether Congress intended to deport aliens convicted of aggravated felonies prior to November 18, 1988. While the alien in *Sousa* was deemed deportable for a 1990 conviction for unarmed robbery, we addressed and dismissed the very arguments Seale proffers here.

In *Sousa* we held that the provisions of the ADAA and the IMMAct were irrelevant to whether Sousa could be deported for an aggravated felony that occurred in 1990 because "IIRIRA's more recent definition adopted in 1996 ... expressly rejects temporal limitations and applies to all

actions taken after its enactment." 226 F.3d at 33. We explicitly rejected Sousa's argument that a practical distinction could be drawn between IIRIRA's definitional section, which contains a retroactive provision, and IIRIRA's operational section mandating removal.

> In all events, when Congress in IIRIRA enlarged the definition of aggravated felony and made it explicitly applicable to convictions regardless of when they were entered, Congress made perfectly clear its intent that aliens in this enlarged class should now be subject to removal. The removal provision necessarily adopted the enlarged definition, including its rejection of any temporal limitation based on the date of conviction. Here, no ambiguity exists about Congress's intent of the kind that has led to so much litigation about the retroactive application of restrictions on waivers.

*Id.* at 33–34. *Accord Kuhali,* 266 F.3d at 110 (concluding that alien was removable based on a 1980 conviction because "Congress has made explicit that the new provisions of IIRIRA should apply retroactively"). Thus, Seale's claims are doomed by our precedent in *Sousa* that Congress's unambiguous intent when it enacted IIRIRA was to require the deportation of aliens convicted of aggravated felonies, regardless of the date of conviction. As a subsequent panel, we are bound by stare decisis to follow *Sousa. Stewart v. Dutra Constr. Co.,* 230 F.3d 461, 467 (1st Cir. 2000) (stating that the principle that a ruling of law by a panel of this court is binding upon subsequent panels is "an integral component of our jurisprudence").

██ We need not belabor the point. It is well established that, within constitutional limits, Congress has the power to legislate retroactively. *St. Cyr,* 533 U.S. at 315, 121 S.Ct. 2271. When a case implicates a federal statute enacted after the events in the suit, "the court's first task is to determine whether Congress has expressly prescribed the statute's proper reach." *Landgraf v. USI Film Prods.,* 511 U.S. 244, 280, 114 S.Ct. 1483, 128 L.Ed.2d 229 (1994). In *Sousa* we concluded that Congress, when it enacted IIRIRA, clearly expressed its intent that an alien convicted of an aggravated felony would be subject to removal regardless of the date of conviction. 226 F.3d at 34–35. In *St. Cyr,* the Supreme Court identified the amendments to the definition of aggravated felony as an example of "Congress's willingness ... to indicate unambiguously its intention to apply specific provisions retroactively." 533 U.S. at 318–19, 121 S.Ct. 2271. If an alien has been convicted of a crime that meets the definition of an aggravated felony he is subject to deportation, regardless of the date of conviction.

██ Binding precedent also dooms Seale's claims that the retroactive application of the statute violates the federal constitution. It is well established that neither the Ex Post Facto Clause nor the Double Jeopardy Clause is applicable to deportation proceedings. *See Breed v. Jones,* 421 U.S. 519, 528, 95 S.Ct. 1779, 44 L.Ed.2d 346 (1975) (concluding that the Double Jeopardy Clause is inapplicable to deportation proceedings); *United States v. Bodre,* 948 F.2d 28, 33 (1st Cir.1991) (stating "[t]he ex post facto clause has been unswervingly held as inapplicable to matters of deportation"). Deportation, however severe its consequences, has been consistently classified as a civil rather than a criminal procedure. As the Supreme Court has stated:

> It is thoroughly established that Congress has power to order the deportation of aliens whose presence in the country it deems hurtful. The determination by facts that might consti-

tute a crime under local law is not a conviction of crime, nor is the deportation a punishment; it is simply a refusal by the government to harbor persons whom it does not want.

*Bugajewitz v. Adams,* 228 U.S. 585, 591, 33 S.Ct. 607, 57 L.Ed. 978 (1913).

## IV. CONCLUSION

The judgment of the district court dismissing Seale's petition for habeas corpus on the merits is ***affirmed.***