Liam Brent KELLY, Petitioner,

v.

Steven J. FARQUHARSON; Immigration and Naturalization Service; Sheriff Thomas Hudson; and Bristol County Jail, Respondents.

No. CIV.A. 02–10884–PBS.

United States District Court,
D. Massachusetts.

April 3, 2003.

Liam Brent Kelly, [Pro se], Bristol County House of Correction, New Bedford, Lenore Glaser, Law Office of Lenore Glaser, Boston, for Liam Brent Kelly, Petitioner.

Frank Crowley, Immigration and Naturalization Service, Jeremy M. Sternberg, United States Attorney's Office, John Joseph Moakley Federal Courthouse, Boston, for Stephen Farquharson, Respondent.

### MEMORANDUM AND ORDER

SARIS, District Judge.

Habeas petitioner Liam Brent Kelly, a non-criminal detainee from Canada, challenges the order of removal issued by the Immigration and Naturalization Service ("INS") on the grounds: (1) that he was denied his constitutional right of access to the Board of Immigration Appeals ("BIA") and the courts; and (2) that prior to the 1996 amendments to the Immigration and Nationality Act, he would have been eligible for a waiver of deportation and that the amendments have been unconstitutionally retroactively applied to him.

Complaining about his conditions of confinement, he asserts that the INS has moved him to different prisons multiple times, which interfered with his ability to receive court materials in a timely way, that the INS has lost his legal papers, and that he was held virtually naked in unsanitary, cold, and difficult conditions, without access to a law library or legal materials. He points out that the multiple moves also interfered with his ability to meet conditions of bail set for voluntary departure. Accordingly, he has stayed in custody although he has never been convicted of a crime.

After an evidentiary hearing and review of the post-hearing submissions, I find that some (not all) of petitioner's allegations regarding his conditions of confinement are true, but that these conditions did not interfere in a material way with his access to the BIA or the courts. Moreover, I conclude that he has not been impermissibly harmed by any retroactive effect of the recent legislative amendments. This action shall be transferred to the United States Court of Appeals for the First Circuit. The stay of removal entered by this Court on December 16, 2002 will be dissolved 30 days after the date of this Memorandum and Order.

### PROCEDURAL BACKGROUND

In the original petition, pursuant to 28 U.S.C. § 2241, Mr. Kelly complained about his transfers from various state correctional facilities and his purported lack of access to mail and to the courts. Because the habeas petition appeared to challenge the conditions of his confinement rather than the fact or duration of his confinement, I directed Mr. Kelly to demonstrate good cause why his petition should not be

dismissed. Docket No. 2 (July 29, 2002 Memorandum and Order).

On December 2, 2002, Mr. Kelly sought an emergency stay of deportation.[1] *See* Docket No. 14. In his filing, consisting of 108 double-sided pages of rambling handwritten text, Kelly appeared to argue that his due process rights had been violated because the conditions of his confinement caused him to be unable to file a brief with the BIA in support of the administrative appeal of his removal order. He also contended that he had been denied access to the law library, could not send or receive mail, and had been placed naked in a "rubber room" with urine on the floor.

Because Kelly's Section 2241 habeas petition had not yet been served on the respondents,[2] I directed that the petition be served on the INS respondents and scheduled a status hearing for December 16, 2002.

At the December hearing, Kelly, appearing pro se, stated that sometime in late July or early August while confined at Bristol County Jail ("BCJ"), he was held in unsanitary conditions, denied access to legal materials, and repeatedly was transferred among several facilities. Kelly again claimed that as a consequence of these events, he was unable to timely file a "brief" with the BIA in support of his appeal of his removal order. He further claimed that when he was transferred to Plymouth County Correctional Facility ("PCCF") in late September 2002, he was held naked in a "rubber room" that had urine on the floor, that he had been denied the use of a mattress, that he was forced to sleep on a cold floor, and that his legal materials had been taken from him and never returned.

At the conclusion of the hearing, I granted Kelly a preliminary stay of deportation and scheduled an evidentiary hearing for January 2, 2003, to determine if the stay should be vacated or otherwise modified. I also appointed Lenore Glaser, Esq. as stand-by counsel for petitioner and informed petitioner that because his pleadings were difficult to read and comprehend, any future filing by him should be no longer than 10–pages in length.

On December 27, 2002, respondents submitted a motion to dismiss with numerous exhibits, contending that (1) this Court lacks the authority to enjoin petitioner's removal and lacks jurisdiction over this action; (2) that even if the Court had jurisdiction over this action, petitioner has failed to demonstrate by "clear and convincing" evidence that he was entitled to a stay of removal; (3) that petitioner had failed to state a colorable claim of legal error in his habeas petition; and (4) that the petition should be dismissed because it challenged only petitioner's conditions of

---

1. Prior to the motion for a stay of deportation, petitioner filed four other pleadings as well as several letters with the Court including: (1) another petition for a writ of habeas corpus containing legal argument received August 23, 2002; (2) a document containing journal entries received September 2, 2002; (3) another document containing journal entries received September 9, 2002; and (4) a document entitled "notice of appeal" containing the captions of four different courts received September 12, 2002. His pleadings are rambling and generally unclear as to the precise constitutional claims being pressed.

2. Petitioner filed this action without submitting the $5 filing fee or an application to proceed without prepayment of the filing fee. In my July 29, 2002 Memorandum and Order, I directed Mr. Kelly to either pay the filing fee or to submit a fee waiver application within 28 days of the order. Because the July 29, 2002 Memorandum and Order was returned to the Court as undeliverable and was re-sent to petitioner on August 14, 2002, the Court will accept the fee waiver application filed by petitioner on September 9, 2002 as timely and will grant the application.

confinement rather than the fact or duration of his confinement.

At the January 2, 2003 evidentiary hearing on the motion for preliminary relief, the Court heard the testimony of petitioner and two witnesses for the government. It became apparent that the core of petitioner's claims about his alleged inability to file a BIA brief centered around two related incidents: (1) a disciplinary sanction involving petitioner's "canteen"; and (2) a "hunger strike" embarked upon by petitioner as a result of disciplinary sanctions. The Court permitted both sides to file post-hearing submissions.

*FACTUAL FINDINGS*

Kelly is a Canadian citizen who most recently entered the United States in 1996 with authorization to remain for 6–months as a non-immigrant visitor. INS records suggest he first entered in 1994 and worked as a carpenter. He returned to Canada in 1996 to get tools, and then re-entered through Michigan. In July 2001, he was arrested on three charges in Somerville, Massachusetts, and the Somerville District Court sent him for mental observation to determine competency at Bridgewater State Mental Hospital. Kelly claims he was injected with antipsychotic medications, even though he has no mental illness. At the time he was arrested, he was homeless. The record does not contain the reason why Kelly was sent for mental observation, and Kelly hotly contests that he has any mental problems. He was never convicted of the Massachusetts charges, although he was convicted of a crime in Utah and sentenced to serve 120 days.

On August 13, 2001, Kelly was served with a detainer while at the hospital and was informed that he was subject to removal because he had remained in the United States for longer than 6–months. Kelly was taken into INS custody on December 5, 2001. His initial detention was at BCJ. The INS has switched him six times to different institutions, as outlined below.[3]

| | |
|---|---|
| 12/05/01–04/05/02 | BCJ |
| 04/05/02–04/22/02 | Franklin County House of Correction ("FCH") |
| 04/22/02–05/02/02 | BCJ |
| 05/02/02–05/06/02 | FCH |
| 05/06/02–06/15/02 | Adult Correctional Institution—Rhode Island |
| 06/15/02–09/27/02 | BCJ |
| 09/27/02–present | Plymouth County Correctional Facility |

Removal proceedings began in February 2002, and progressed according to the following timeline.

| | |
|---|---|
| 02/04/02 | INS notice of 02/25/02 hearing for removal proceedings. |
| 02/25/02 | Immigration Judge determines that Kelly is subject to removal; grants Kelly 30–days for voluntary departure. |

---

**3.** According to the INS, this is an unusually high number of transfers, some of which were caused by petitioner's disciplinary infractions.

03/09/02    Kelly files a 19–page Notice of Appeal with BIA, which includes the claim that the 1996 retroactive amendments are unlawful.

07/29/02    BIA informs Kelly that appellate brief is due on 08/16/02. (During this time period, Kelly is in administrative segregation).

08/14/02    Kelly files "Stipulation of Absent Transcript Matter" and "Motion for Extension of Time to File Brief," allegedly with the incorrect BIA office.

08/16/02    Kelly's BIA brief due.

08/30/02    The BIA denies the briefing extension request.

10/15/02    The First Circuit dismisses appeal of the August 2002 BIA order denying a briefing extension.

10/30/02    BIA affirms immigration judge decision and permits him to voluntarily depart upon conditions set by the Immigration Judge.

While Kelly was detained at BCJ on or about July 23, 2002, he was placed in administrative segregation for grabbing his "canteen" items off of a cart. While confined in administrative segregation, he claimed that he was strip-searched, that his cell at that facility had fecal matter on the floor, and that he had little or no access to legal materials or a law library. In late July, Kelly embarked on a hunger strike to protest this treatment and to obtain access to this Court.

Not surprisingly, the INS has a different view of Kelly's conduct. It claims that Kelly verbally abused guards, threw his meal tray, tried to bite a guard, encouraged inmates to "flood out" the toilets in their cells and was belligerent and insolent in following orders. BCJ officials assert that the disciplinary problems intensified in late July and early August 2002. Kelly's brief was due on August 16, 2002 while he was in the segregation unit. He did not have access to a law library until August 14, 2002, at the earliest.

Robert McNiece, the lead detention officer for the INS in this district, met with Kelly in mid-August of 2002 at BCJ to discuss Kelly's hunger strike. As a result of his meeting with Kelly, he was concerned enough about Kelly's well-being to schedule an "unprecedented" meeting the next day with his superior, Joseph O'Malley, and Kelly. Kelly did not complain about his conditions of confinement, but he did demand that he be brought to federal court.

Kelly transferred to the PCCF on or about September 27, 2002, where he was placed in a "rubber room" because of the hunger strike. PCCF officials explain that this room is used for the placement of suicidal inmates for observation pursuant to its Suicide Prevention Plan Procedure. There he was held in a paper johnny, without a mattress, bed, blanket or sheets. He claims (and Plymouth disputes) that there was urine on the floor and the room was uncomfortably cold. It is undisputed that his legal materials were confiscated and never returned because they have been lost or destroyed. As soon as he began eating—about two days later—he was removed from the "rubber room." In addition, petitioner had no access to the telephones until December at Plymouth because his PIN number was not activated. When he complained to McNeil on December 4, 2002 at Plymouth, he gained access to the phones. Kelly also had access to the law library.

On October 30, 2002, the BIA affirmed the immigration judge's decision.

Petitioner filed a 108–page pleading in District Court on December 2, 2002. He did not file for a notice of appeal with the First Circuit, which was due on that date.

## LEGAL ANALYSIS

### I. *Jurisdiction*

■ This Court has jurisdiction to review habeas petitions from INS detainees who are non-criminal aliens. *See generally Chmakov v. Blackman*, 266 F.3d 210, 215 (3rd Cir.2001) (holding that federal courts retain habeas jurisdiction over petitions from both criminal and non-criminal aliens); *Liu v. INS*, 293 F.3d 36, 37 (2d Cir.2002) (same); *Riley v. INS*, 310 F.3d 1253, 1256 (10th Cir.2002) (same); *see generally INS v. St. Cyr*, 533 U.S. 289, 312–313, 121 S.Ct. 2271, 150 L.Ed.2d 347 (2001).

■ This Court also has habeas jurisdiction over petitioner's claim that he was deprived of due process when he was placed in conditions of confinement that prevented him from fairly presenting his claims to the BIA. *See Foroglou v. Reno*, 241 F.3d 111, 113 (1st Cir.2001) (assuming that habeas might be available under restrictive conditions if a due process violation frustrated a deportee's direct appeal); *Chmakov*, 266 F.3d at 215 (holding that district court had habeas jurisdiction over claim that petitioner was denied due process when his lawyer failed to file any brief before the BIA on an appeal, thus rendering the proceedings fundamentally unfair).

It is less clear whether this Court has habeas jurisdiction to consider the plaintiff's claim that the retroactive application of the 1996 amendments violated his constitutional rights. Whether "the District Court now has habeas jurisdiction turns on whether the ability of the court of appeals

to have adjudicated [petitioner's] claim in a direct review proceeding has the effect of eliminating habeas corpus as an alternative remedy." *Seale v. INS*, 323 F.3d 150, 153 (1st Cir.2003) (assuming habeas jurisdiction). *See Kuhali v. Reno*, 266 F.3d 93, 100–01 (2d Cir.2001) (finding habeas jurisdiction even when issue can be determined on direct appeal). Following *Seale*, I will bypass the jurisdictional issue and consider petitioner's challenge to the retroactivity of the amendments because it will resolve the matter. *Seale*, 323 F.3d 150, 153.

■ The government argues that under *Mattis v. Reno*, 212 F.3d 31, 41 (1st Cir. 2000) and *Foroglou*, 241 F.3d at 114–115, this Court lacks jurisdiction over Kelly's claims because he has not exhausted his administrative remedies. However, the BIA does *not* have the authority to consider constitutional claims. *See Liu*, 293 F.3d at 41 (taking the position that the BIA lacks the authority to rule on the constitutionality of the Immigration and Nationality Act ("INA") and the regulations it administers); *Hoang v. Comfort*, 282 F.3d 1247, 1254 (10th Cir.2002), *petition for cert. filed*, 70 U.S.L.W. 3698 (U.S. May 3, 2002) (No. 01–1616) (the BIA does not have the power to reach constitutional arguments and thus is not empowered to grant effective relief); *Liu v. Waters*, 55 F.3d 421, 425 (9th Cir.1995) ("[T]he BIA lacks jurisdiction to decide questions of the constitutionality of governing statutes or regulations."); *Ravindran v. INS*, 976 F.2d 754, 762 (1st Cir.1992) (BIA is without jurisdiction to adjudicate purely constitutional issues) (citations omitted).

■ Exhaustion is not required for constitutional claims that an administrative agency has no power to address. *See McCarthy v. Madigan*, 503 U.S. 140, 147–148, 112 S.Ct. 1081, 117 L.Ed.2d 291 (1992) (exhaustion is generally not required

where "an agency, as a preliminary matter, may be unable to consider whether to grant relief because it lacks institutional competence to resolve the particular type of issue presented, such as the constitutionality of the statute."). Although Congress has required exhaustion of remedies for review of final orders of removal, *see* 8 U.S.C. § 1252(d)(1), it has not done so in the context of habeas petitions.

Because exhaustion of petitioner's constitutional claims concerning (1) the alleged violation of his constitutional right of access to the courts, and (2) the alleged improper retroactive effect of the amendments to the INA are the sorts of claims the BIA cannot consider, exhaustion of these claims is not required or appropriate.

## II. *The Standard for Granting a Stay of Removal*

▉ Respondents argue that under Section 1252(f)(2) of title 8, a party seeking a stay of removal must demonstrate "by clear and convincing evidence that the entry or executing of the removal order is prohibited as a matter of law." [4] However, nearly all of the circuit courts of appeals that have considered whether a party seeking a stay of removal must meet the traditional standard for injunctive relief or the "clear and convincing" standard of Section 1252(f)(2) have held that the traditional standard prevails and that Section 1252(f)(2) only applies to permanent injunctive relief. *Compare Mohammed v. Reno*, 309 F.3d 95, 98 (2d Cir.2002)

(§ 1252(f)(2) applies only to permanent injunctive relief and does not apply to motions for injunctive relief pending appeal of habeas corpus decisions); *accord Maharaj v. Ashcroft*, 295 F.3d 963, 965 (9th Cir. 2002) (same); *Bejjani v. INS*, 271 F.3d 670, 687–89 (6th Cir.2001) (stay pending petition to review INS decision to reinstate order of removal); *Sofinet v. INS*, 188 F.3d 703, 706 (7th Cir.1999) (temporary stay of deportation pending appeal), *with Weng v. U.S. Attorney Gen.*, 287 F.3d 1335, 1337 (11th Cir.2002) (§ 1252(f)(2)'s "clear and convincing" standard applies to motion for a stay of removal pending resolution of his petition for review).

Although the First Circuit has not squarely addressed the applicability of Section 1252(f)(2) to stays of removal, it has held, in the related context of Section 1252(g)'s bar on review of discretionary acts of the INS,[5] that where the district court has the authority to grant habeas writs, Section 1252(g) does not deprive the court of authority to provide traditional ancillary relief needed to protect its authority to issue the writ. *See Wallace v. Reno*, 194 F.3d 279, 285 (1st Cir.1999). Thus, I hold that the appropriate standard for preliminary injunctive relief in this action is the traditional standard for injunctive relief.

## III. *The Merits*

### A. *Access to the Courts*

▉ Petitioner's access to the courts argument is based on his claims that he was

---

**4.** Section 1252(f)(2) provides:
Notwithstanding any other provision of law, no court shall enjoin the removal of any alien pursuant to a final order under this section unless the alien shows by clear and convincing evidence that the entry or execution of such order is prohibited as a matter of law.
8 U.S.C. § 1252(f)(2).

**5.** Section 1252(g) provides:

Except as provided in this section and notwithstanding any other provision of law, no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter.
8 U.S.C. § 1252(g).

mistreated during the period his BIA brief was due, that he was denied access to the law library, and that while at PCCF, his legal file was lost.

█ In order to state an access to court claim based on a backward-looking "missed opportunity" to litigate, a party must (1) identify a non-frivolous claim that he was denied the opportunity to pursue by a government actor; and (2) allege that the access to court claim can provide a remedy that could not be obtained on an existing claim. *See Christopher v. Harbury*, 536 U.S. 403, 122 S.Ct. 2179, 2186–87, 153 L.Ed.2d 413 (2002).

Under that standard, petitioner has failed to state a claim. As discussed above, even if the BIA did not consider petitioner's constitutional arguments concerning the alleged improper retroactive effect of the amendments to the INA because it did not receive petitioner's brief,[6] these constitutional claims could be and were raised in a habeas petition and can be raised again on direct review of his removal order. Under the second prong of *Christopher*, petitioner has not alleged that he was denied any remedy that he could not now obtain on habeas or direct review of his removal order and has thus failed to state a claim.

### B. *Retroactivity*

█ Petitioner claims that under the former provisions of 8 U.S.C. § 1182(c)

and (h) he would not have been subject to deportation, and that the 1996 amendments were improperly applied to him. Both the Anti–Terrorism and Effective Death Penalty Act ("AEDPA"), enacted in April 1996 and the Illegal Immigration Reform and Immigrant Responsibility Act ("IIRIRA"), enacted in September 1996, restricted relief under Section 212(c) and Section 212(h). *See* 8 U.S.C. § 1229b(a)(3) and 8 U.S.C. § 1182(h).

The Supreme Court has held that the provisions of IIRIRA that eliminated the availability of Section 212(c) relief for aliens convicted of aggravated felonies would not be applied retroactively to criminal aliens who pleaded guilty before the effective date of the act. *See St. Cyr*, 533 U.S. at 321–323, 121 S.Ct. 2271. Such an application of the amendments would be impermissibly retroactive because it would impose a "new legal consequence to events completed before its enactment." *Id.* at 320, 121 S.Ct. 2271 (citing *Landgraf v. USI Film Prods.*, 511 U.S. 244, 270, 114 S.Ct. 1483, 1499, 128 L.Ed.2d 229 (1994)).

█ The problem for petitioner is that, even if the former provisions of the INA permitting waivers of deportation in certain circumstances were applied to him, petitioner still would be ineligible for that relief.[7] Former Section 212(c) of the

---

**6.** It is unclear from the record whether the BIA considered this claim. Petitioner did raise the issue in his notice of appeal of the immigration judge's removal order.

**7.** The "ex post facto" clause of the Constitution, Art. 1, § 9, cl.3, does not apply to petitioner because removal statutes are civil in nature, and do not constitute criminal punishment for past acts. *See INS v. Lopez–Mendoza*, 468 U.S. 1032, 1038, 104 S.Ct. 3479, 82 L.Ed.2d 778 (1984) (rejecting the argument that deportation is punishment for past behavior and therefore subject to the "various

protections that apply in the context of a criminal trial"); *Harisiades v. Shaughnessy*, 342 U.S. 580, 594, 72 S.Ct. 512, 96 L.Ed. 586 (1952) ("Deportation, however severe its consequences, has been consistently classified as a civil rather than a criminal procedure."). Kelly therefore may not challenge any retroactive application of AEDPA or IIRIRA under the ex post facto clause, which applies only to the retroactive application of criminal statutes. *Perez v. Elwood*, 294 F.3d 552, 557 (3rd Cir.2002); *accord United States v. Bodre*, 948 F.2d 28, 33 (1st Cir.1991) (deportation is a civil proceeding and "is not punishment for

INA[8] was interpreted by the BIA to authorize any "permanent resident alien" with "a lawful unrelinquished domicile of seven consecutive years" to apply for a discretionary waiver from deportation if he or she had been convicted of an "aggravated felony." *See* 8 U.S.C. § 1182(c) (repealed). First, petitioner did not have an unrelinquished domicile of seven consecutive years since he left and then re-entered the country in 1996. Second, there is no evidence that he was (1) "lawfully" domiciled here or (2) that he either was admitted as a legal permanent resident or received an adjustment of status to legal permanent resident. Thus he has not sufficiently alleged that he would be eligible for this relief. *See Tulloch v. INS*, 175 F.Supp.2d 644, 649–50 (S.D.N.Y.2001) (denying habeas petition where petitioner was not entitled to be considered for § 212(c) relief because he had not been admitted as legal permanent resident); 8 U.S.C. § 1255(a) (adjustment of status); 8 U.S.C. § 1101(a)(20) (term "lawfully admitted for permanent residence" means the status of having been lawfully accorded the privilege of residing permanently in the United States as an immigrant in accordance with the immigration laws); *cf. Kolster v. Ashcroft*, 188 F.Supp.2d 60, 62 (D.Mass.2002)

(holding that § 212(c) relief is available to anyone with seven years of "lawful unrelinquished domicile" who attained "legal permanent resident status" some time during that period).

Former Section 212(h) of the INA[9] authorized the Attorney General to grant, in his discretion, a waiver of removal where an immigrant was (1) the spouse, parent, son, or daughter of a citizen of the United States or (2) an alien lawfully admitted for permanent residence and (3) it was established that the denial of admission would result in extreme hardship to a U.S. citizen, or lawfully resident spouse, parent, son, or daughter of such an alien. 8 U.S.C. § 1182(h)(1)(B). First, as a non-legal permanent resident who is not being removed for an aggravated felony conviction, the 1996 changes to Section 1182(h) which only affected legal permanent residents convicted of aggravated felonies, do not apply to Kelly. Further, Petitioner has not alleged that his removal would result in extreme hardship to any U.S. citizen.

### C. *The Conditions of Confinement Claims*

■ Mr. Kelly's claims concerning his repeated transfers between facilities in

---

criminal acts but rather a governmental decision not to harbor an unwanted alien.").

**8.** Former Section 1182(c) provided, relevant part, that:

Aliens lawfully admitted for permanent resident who temporarily proceeded abroad voluntarily and not under an order of deportation, and who are returning to *a lawful unrelinquished domicile of seven consecutive years,* may be admitted in the discretion of the Attorney General without regard to the provisions of subsection (a) of this section (other than paragraphs (3) and (9)(C)). Nothing contained in this subsection shall limit the authority of the Attorney General to exercise the discretion vested in him under section 1181(b) of this title.

8 U.S.C. § 1182(c) (repealed) (emphasis added).

**9.** Section 1182(h) stated in relevant part:

The Attorney General may, in his discretion, waive the application of [provisions relating to exclusion] . . . .
(B) in the case of an immigrant who is the spouse, parent, son, or daughter of a citizen of the United States, or an alien lawfully admitted for permanent residence if it is established to the satisfaction of the Attorney General that the alien's exclusion would result in extreme hardship to the United States citizen or lawfully resident spouse, parent, son, or daughter of such alien;

8 U.S.C. § 1182(h).

and outside of this state, the deprivation of his legal materials as well as his claims about the quality and nature of his treatment (particularly in light of the allegations of possible mental health problems) are deeply troubling.

However, as the Court stated in the July 29, 2002 Memorandum and Order, to the extent that petitioner's claims are based solely on the conditions of his confinement, they are not properly the subject of a habeas petition. *See Rael v. Williams*, 223 F.3d 1153, 1155 (10th Cir.2000) (affirming dismissal without prejudice of conditions of confinement claims in habeas petition); *accord Kamara v. Farquharson*, 2 F.Supp.2d 81, 89 (D.Mass.1998) (dismissing habeas petition without prejudice to any due process or Eighth Amendment claims). Therefore, to the extent that the petition is based on claims concerning the conditions of petitioner's confinement, the claims are subject to dismissal.

### IV. *Direct Review of Petitioner's Order of Removal*

■■■ As Respondents have acknowledged, any petition for direct review of Kelly's removal order by the First Circuit would be untimely because it would be filed more than 30–days after the BIA's decision affirming Kelly's removal. *See* 8 U.S.C. § 1252(a)(3)(b)(1). Some of the challenges raised in Kelly's rambling documents are not cognizable in a habeas petition. To the extent that the pleadings filed by petitioner on December 2, 2002 may be construed as an attempt to seek direct review of his order of removal and would have been timely filed had they been filed in the proper court, or to the extent this Court lacked jurisdiction over the habeas claims, the Court will transfer this action to the First Circuit for its review.[10]

### *CONCLUSION*

(1) Respondent's petition for habeas corpus is ***DENIED***;

(2) This action shall be transferred to the United States Circuit Court of Appeals for the First Circuit;

(3) The stay of removal entered in this action will be dissolved within 30 days of the date of this Memorandum and Order.

SO ORDERED.

---

**10.** Section 1631, Transfer to Cure Want of Jurisdiction, provides:

Whenever a civil action is filed in a court as defined in section 610 of this title or an appeal, including a petition for review of an administrative action, is noticed for or filed with such a court and that court finds that there is a want of jurisdiction, the court shall, if it is in the interest of justice, transfer such action or appeal to any other such court in which the action or appeal could have been brought at the time it was filed or noticed, and the action or appeal shall proceed as if it had been filed in or noticed for the court to which it is transferred on the date upon which it was actually filed in or noticed for the court from which it is transferred.

28 U.S.C. § 1631.